KENNETH LITTLE, EMPLOYEE v. PENN VENTILATOR COMPANY, EMPLOYER, AND HOME INSURANCE COMPANY, CARRIER

No. 398PA85

(Filed 2 July 1986)

**1. Master and Servant § 75— workers' compensation—future medical expenses— effect a cure or give relief**

Under N.C.G.S. § 97-25, awards for expenses for future medical treatments are appropriate when such treatments are required to "effect a cure" or "give relief" even if they will not lessen the period of disability.

**2. Master and Servant § 75— workers' compensation—meaning of "relief"**

"Relief" within the meaning of N.C.G.S. § 97-25 embraces not only an affirmative improvement toward an injured employee's health but also the prevention or mitigation of further decline in that health due to the compensable injury.

**3. Master and Servant § 75— workers' compensation—medical expenses to "give relief"**

Future expenses which will be incurred to monitor an employee's medical condition are reasonably required to "give relief" if there is a substantial risk that the employee's condition may take a turn for the worse.

**4. Master and Servant § 75— workers' compensation—award of future medical expenses**

Where the Industrial Commission made findings of fact supported by competent evidence that plaintiff faces a substantial risk of future medical complications from an eye injury, including loss of vision, future treatments to monitor his condition are reasonably required to give relief, and an award of future medical expenses for such purpose was proper.

**5. Master and Servant § 73.1— compensation for eye injury—applicable statute**

Plaintiff's eye injury was compensable under N.C.G.S. § 97-31(24) rather than under subsections (16) and (19) where plaintiff did not lose the injured eye or suffer any loss of vision.

Little v. Penn Ventilator Co.

6. **Master and Servant § 69— compensation under N.C.G.S. § 97-31(24)—discretion of Industrial Commission**

By employing the word "may" in N.C.G.S. § 97-31(24), the Legislature intended to give the Industrial Commission discretion whether to award compensation under that section. However, if the Commission does make an award, it must make a proper and equitable one.

7. **Master and Servant § 69— amount of compensation—discretion of Industrial Commission**

The decision regarding the amount of compensation awarded under N.C.G.S. § 97-31(24) rests in the sound discretion of the Industrial Commission, and its decision will not be overturned on appeal absent an abuse of discretion on its part.

8. **Master and Servant § 73.1— amount of compensation for eye injury**

An award of $2,500 for a serious, permanent eye injury was proper and equitable where the injury places plaintiff at great risk for future complications but he has not yet suffered any loss of vision or decrease in earning capacity.

ON plaintiff's petition for further review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 75 N.C. App. 92, 330 S.E. 2d 276 (1985), affirming a workers' compensation award by the Industrial Commission.

*Ralph G. Jorgensen for plaintiff appellant.*

*Hedrick, Eatman, Gardner & Kincheloe by William J. Garrity and Edward L. Eatman for defendant appellees.*

EXUM, Justice.

Plaintiff seeks workers' compensation for an injury to his left eye. A deputy commissioner of the Industrial Commission awarded plaintiff $2,500 under N.C.G.S. § 97-31(24) for permanent eye injury and medical expenses incurred as a result of the injury until plaintiff reached maximum improvement. The deputy commissioner denied any future medical expenses after plaintiff reached maximum medical improvement concluding: "There is no provision in the Workers' Compensation Act for periodic medical examinations unless they are determined to be necessary to lessen the plaintiff's disability." Both plaintiff and defendants appealed to the Full Commission. Plaintiff contended $2,500 was not adequate compensation for permanent injury to his eye and defendants contended N.C.G.S. § 97-31(24) does not entitle plaintiff to

Little v. Penn Ventilator Co.

any compensation. The Full Commission affirmed the $2,500 award but modified that portion relative to medical expenses as follows:

> [I]t appears from a reading of the record that plaintiff will need monitoring of his medical condition in the future by his physicians so as to tend to lessen his period of disability. The portion of the decision relating to medical expenses shall be amended and revised to provide that the defendants shall continue to pay medical expenses incident to plaintiff's injury so long as his physician deems it necessary to lessen the period of disability. The Full Commission adopts as its own the Opinion and Award of the Hearing Commissioner as herein amended.

Both parties brought before the Court of Appeals the same contentions they argued to the Industrial Commission. In addition, defendants argued the Commission's award of future medical expenses was improper because plaintiff had no period of disability resulting from his injury which future medical treatments could lessen. The Court of Appeals struck that aspect of the Commission's award pertaining to future medical expenses, saying:

> 'Disability' is defined under the applicable law as 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' G.S. 97-2(9). *See Watkins v. Central Motor Lines,* 279 N.C. 132, 181 S.E. 2d 588 (1971). G.S. 97-25 entitles plaintiff to reimbursement of such medical expenses as will tend to 'lessen [his] period of disability.' The record before us reveals no evidence of continuing disability as that term is defined in the Workers' Compensation Act. In fact the evidence in this case shows affirmatively that plaintiff had returned to work after five weeks and was earning more than before his injury.

*Little v. Ventilator Co.,* 75 N.C. App. at 97-98, 330 S.E. 2d at 279. The questions presented are whether: (1) plaintiff is entitled to future medical expenses under N.C.G.S. § 97-25 even though they will not lessen the period of disability; (2) N.C.G.S. § 97-31(24) authorizes compensation for plaintiff's eye injury; and (3) if it does, whether $2,500 is proper and equitable compensation. We answer them all affirmatively.

I.

Evidence in the record tends to show the following: While operating a rivet machine in the employment of Penn Ventilator Company, plaintiff was struck in the left eye by a flying sliver of metal. Plaintiff's physician, Dr. J. K. Chambers, elected not to remove the metal; instead, he performed laser surgery to seal the site where it entered plaintiff's eye.

After plaintiff's release from the hospital, he returned to work for defendant, Penn Ventilator Company, and at the time of the hearing below was earning wages at a higher rate than before he was injured. Plaintiff testified the injury had no adverse effect on his ability to perform his job.

Although vision in plaintiff's eye remains normal, plaintiff's injury poses a constant threat of future complications, including loss of vision. The metal imbedded in his eye may rust or cause retinal detachment. Upon evidence of the happening of either event, surgery will be necessary. Because of the threat to plaintiff's eyesight posed by these potential complications, plaintiff's eye requires close medical supervision, including at a minimum periodic check-ups and yearly electroretinograms, a test for recording changes in the retina.

With this evidence before it, the Commission, adopting the findings of the hearing commissioner, made findings and conclusions of law as follows:

1. On March 28, 1980, plaintiff was operating a rivet machine when it malfunctioned and a piece of metal hit plaintiff in his left eye. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.

2. Plaintiff was hospitalized and treated for a laceration of his cornea and as a result of that treatment the piece of metal was left in his eye and the laceration was closed around it. As a result, plaintiff has a visible scar tract through the vitreous gel body of his left eye which presents a clear danger for retinal detachment in the future. Plaintiff has a scar in the retina surrounding the encysted foreign body. This type of injury results in a significantly increased

occurrence of retinal detachment when compared with the incidence in normal, uninjured eyes.

3. As a result of the injury herein, plaintiff has suffered permanent injury to an important part of his body, i.e., his left eye, for which no compensation is payable under any other subdivision of this section. Plaintiff has not suffered any loss of vision as a result of this injury at this time.

. . . .

5. As a result of the injury herein plaintiff will require periodic check-ups to make sure there is no loss of vision or rusting of the metallic body left in his eye or evidence of retinal detachment. . . .

Defendants owe to plaintiff $2,500.00 for permanent injury to his eye. G.S. 97-31(24).

Upon the foregoing findings of fact and conclusions of law the Commission entered an award of $2,500 less $350 for attorney's fees for the eye injury and directed payment of further medical expenses as hereinabove set out.

II.

Plaintiff contends the Court of Appeals erred in striking his award for future medical expenses. We agree with the Court of Appeals that future medical treatment will not lessen the period of plaintiff's disability because plaintiff's injury has not resulted in a period of disability beyond the healing period. Where as in this case there is no reduction in earning ability, there is no period of disability to be lessened. N.C.G.S. § 97-25 does not, however, limit an employer's obligation to pay future medical expenses to those cases in which such expenses will lessen the period of disability. The statute also requires employers to pay the expenses of future medical treatments even if they will not lessen the period of disability as long as they are reasonably required to (1) effect a cure or (2) give relief.

Before 1973 an employer was not obligated to pay the expenses of medical treatment given more than ten weeks after the date of injury unless the additional treatment would tend to lessen the period of disability. N.C.G.S. § 97-25 then provided:

> Medical, surgical, hospital, nursing services, medicines, sick travel, and other treatment including medical and surgical supplies as may reasonably be required, *for a period not exceeding ten weeks from date of injury* to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, . . . shall be provided by the employer.

(Emphasis added.) *See Peeler v. Highway Comm'n,* 302 N.C. 183, 186, 273 S.E. 2d 705, 707 (1981). The ten-week limitation had the practical effect of making all awards for the expenses of future medical treatment contingent upon a claimant's showing that such treatment is required to lessen the period of disability.

[1] In 1973 the legislature amended N.C.G.S. § 97-25 by deleting the ten-week limitation with respect to medical treatments required to effect a cure or give relief. 1973 N.C. Sess. Laws ch. 520, § 1(b). It is this version of the statute which governs this case, and it provides:

> Medical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the commission will tend to lessen the period of disability, . . . shall be provided by the employer.

N.C.G.S. § 97-25 (1985). The legislature's obvious intent was to compel employers to provide medical treatments reasonably required to "effect a cure or give relief" more than ten weeks after the date of injury. As a result of the 1973 amendment N.C.G.S. § 97-25 contains three grounds upon which an employer must provide future medical expenses where before 1973 it contained only one. In addition to the traditional duty to provide treatments required to lessen the period of disability, the employer also must provide treatments to effect a cure or give relief.

If awarding of expenses for medical treatment were construed to be dependent upon a claimant's showing that further treatment would lessen disability, many victims of scheduled injuries would be left without compensation. Claimants with scheduled injuries often are unable to demonstrate their injuries

resulted in any decrease in earning ability. In those cases, as in the case before us, where claimants have no earning disability, no amount of medical treatment will lessen their disability. Even under the law as it existed prior to 1973, compensation presumably was paid for medical expenses incurred not more than ten weeks after injury without a showing of disability or that the medical treatment caused a decrease therein. By removing the ten-week limitation, the legislature surely intended not to restrict but to extend the right of claimants to recover their medical expenses.

A case which illustrates the correct interpretation of N.C.G.S. § 97-25 by analogy is *Smith v. American & Efird Mills*, 305 N.C. 507, 290 S.E. 2d 634 (1982). The issue in that case was whether the Industrial Commission erred in restricting its award of future medical expenses to the 300-week period for which it awarded compensation for partial disability. *Smith* applied the 1970 version of N.C.G.S. § 97-59[1] rather than § 97-25. N.C.G.S. § 97-59 contains a specific provision for awarding medical benefits in cases involving occupational disease. Under it benefits may be awarded under that provision if they will: (1) lessen the period of disability or (2) provide needed relief. The statute applied in *Smith* provided:

> In the event of disability from an occupational disease, the employer shall provide reasonable medical and/or other treatment for such time as in the judgment of the Industrial Commission will tend to lessen the period of disability or provide needed relief . . . .

305 N.C. at 512, 290 S.E. 2d at 637. In *Smith* the Court found competent evidence to support the Commission's finding of fact that " 'medical treatment will be necessary for plaintiff's lifetime and will provide plaintiff with needed relief, though treatment will not reverse the damage to the lungs which has become permanent, but will only serve to prevent further damage.' " *Id.* at 513, 290 S.E. 2d at 638.

In N.C.G.S. § 97-25, as in N.C.G.S. § 97-59, the governing statute in *Smith*, the legislature has provided alternate grounds

---

1. Although N.C.G.S. § 97-59 has since been rewritten, *see* N.C.G.S. § 97-59 (1985), there has been no change substantively in the provisions applied in *Smith*.

Little v. Penn Ventilator Co.

for awarding expenses for future medical treatments. Awards for such treatments are appropriate, therefore, even if those treatments will not lessen the period of disability as long as they are required to "effect a cure" or "give relief."

Language in the Court of Appeals' opinion indicates that court may have considered and rejected other grounds for awarding future medical expenses besides lessening of disability:

> The medical reports and letters from plaintiff's physicians indicate that he has reached maximum recovery and that his condition has remained stable. While plaintiff is required to undergo continued medical treatment for his injury, the treatment is for purposes of monitoring and observation rather than to hasten plaintiff's return to health or give relief. The expenses involved in that treatment are not recoverable under G.S. 97-25.

*Little v. Ventilator Co.*, 75 N.C. App. at 98, 330 S.E. 2d at 279. This language in the Court of Appeals' opinion indicates that future medical treatment for purposes of monitoring and observation of an injured employee's condition cannot as a matter of law give relief. We disagree. On the basis of the Commission's findings of fact we conclude that future medical services which will be incurred to monitor plaintiff's condition will give relief. We, therefore, reverse the Court of Appeals on this point and reinstate the Commission's award of future medical expenses.

[2, 3] In our judgment relief embraces not only an affirmative improvement towards an injured employee's health, but also the prevention or mitigation of further decline in that health due to the compensable injury. *See Smith v. American & Efird Mills*, 305 N.C. 507, 290 S.E. 2d 634 (medical treatment would prevent further damage though it would not reverse damage to lungs). As a result of the 1973 amendment to N.C.G.S. § 97-25 employers must provide treatments reasonably required more than ten weeks after an injury to prevent an employee's health from further declining. In the usual case where future treatments are required to give such relief, treatments already begun must be extended into the future to relieve the effects of an injury which became manifest on the date the injury occurred or soon afterwards. The full extent of an injury is not, however, always immediately apparent. We believe the 1973 amendment requires employers to

provide medical treatment or services reasonably required to avoid insidious complications which could in the future develop from the injury. It follows that future expenses which will be incurred to monitor an employee's medical condition are reasonably required to give relief if there is a substantial risk that the employee's condition may take a turn for the worse. Monitoring the employee's condition plays a vital role in preventing its future deterioration. Early detection of any unfavorable change in that condition not only signals the necessity for procedures to arrest the deterioration but also almost always improves a patient's prognosis.

Furthermore and importantly, where there is a substantial risk that an employee's condition will decline, monitoring serves to assuage the employee's fear by keeping him informed of the lack of any change in his condition. Even if the employee's condition does change for the worse, monitoring alleviates the anxiety which arises out of uncertainty by keeping the employee informed about his medical status. We believe these psychological and emotional benefits which flow from monitoring the employee's condition constitute "relief" as that term is used in the statute.

[4] Because in this case the Commission made findings of fact supported by competent evidence that plaintiff faces a substantial risk of future medical complications, including loss of vision, we conclude that future treatments to monitor his condition are reasonably required to give relief.

Our conclusion that plaintiff's future medical expenses are required to give relief is bolstered by the impracticable result which would follow a contrary decision. Had plaintiff's physician elected to perform surgery to remove the embedded foreign body immediately after the accident, certainly the treatment would have fallen within the statutory definition of "relief." Plaintiff's physician apparently elected a safer treatment than immediate surgery because of the considerable risks associated with surgery on the intricate optical organ. Sound public policy would not condone the denial of plaintiff's medical expenses involved in the more conservative monitoring approach simply because his physician elected not to pursue a riskier course of treatment.

Our conclusion that monitoring plaintiff's condition will give relief also distinguishes this case from *Millwood v. Cotton Mills*,

215 N.C. 519, 2 S.E. 2d 560 (1939), and *Peeler v. Highway Comm.*, 48 N.C. App. 1, 269 S.E. 2d 153 (1980), *aff'd per curiam*, 302 N.C. 183, 273 S.E. 2d 705 (1981), relied upon by the Court of Appeals. Although in both cases this Court denied future medical expenses, both cases arose under the pre-amended version of N.C.G.S. § 97-25 in which decreasing the period of disability was the sole ground upon which the statute obligated an employer to pay for such expenses. In *Millwood* plaintiff suffered an industrial accident which left her totally and permanently disabled. The issue in that case was whether the Industrial Commission properly awarded medical expenses for an additional period of time beyond the statutorily prescribed ten weeks. The Court interpreted the pre-amended version of N.C.G.S. § 97-25 as follows:

> As we read and construe the wording of the act, it is plain that in order to effect a cure or give relief, medical, surgical, hospital or other treatment shall be provided by the employer for a period of ten weeks. But such treatment may not be required for additional time unless 'it will tend to lessen the period of disability. . . .' Whether additional hospital treatment will tend to lessen the period of disability is a question of fact to be ascertained by the Industrial Commission upon competent evidence. Until and unless such finding be made, the Commission is without jurisdiction to make an award for treatment for an additional period.

*Millwood v. Cotton Mills*, 215 N.C. at 523, 2 S.E. 2d at 562. Because plaintiff was totally disabled permanently, no amount of treatment would lessen the period of disability.

In *Peeler* claimant suffered an injury which resulted in a 20 percent permanent partial disability of his back, a 28 percent permanent partial disability of his right leg, and a 5 percent permanent partial disability of his left leg. He also sustained injuries included within the schedule of N.C.G.S. § 97-31 which resulted in impotence and the lost use of his bladder and secondary sexual organs. The Commission made findings of fact that plaintiff would have to have regular, periodic future examinations because of the risk of future complications including, among others, urinary tract infections, stone formation, electrolyte imbalances and renal insufficiency. The Court of Appeals determined the pre-amended version of N.C.G.S. § 97-25 to be the applicable law. It noted that

under the statute, after a ten-week period beginning on the date of injury, an award of expenses for medical treatment could be made only where that treatment is required to lessen the period of disability. Because plaintiff failed to prove further treatment would lessen the period of his disability, the Court of Appeals denied future medical expenses. In dissent Judge Robert M. Martin argued that the amended version of N.C.G.S. § 97-25 was the applicable law. He interpreted the amended statute to permit an award for future medical expenses on any one of the three alternate grounds noted above. Although it was clear to him that continued treatment would never "effect a cure," or "lessen the period of disability," he thought the evidence would support a finding by the Commission that such treatment is reasonably required to "give relief." *Peeler v. Highway Comm.*, 48 N.C. App. at 8, 269 S.E. 2d at 158. On appeal as of right this Court affirmed *per curiam*. It held that the 1973 amendment did not apply and under the law as it existed prior to 1973 plaintiff was not entitled to future medical expenses.

Neither *Peeler* nor *Millwood*, therefore, was decided under the amended version of N.C.G.S. § 97-25. Neither case precludes the Industrial Commission from awarding future medical expenses in cases where claimants show that further treatment will give relief. If anything, *Peeler's* holding that the 1973 amendment did not apply in that case implies expenses in similar factual circumstances might properly be awarded under the amended version on the ground that they would give relief.

III.

[5]   Plaintiff and defendants both contend the Court of Appeals committed error in affirming the Industrial Commission's $2,500 award of compensation. The Commission based plaintiff's award on N.C.G.S. § 97-31(24) which provides:

In case of the loss or for permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section, the Industrial Commission may award proper and equitable compensation not to exceed ten thousand dollars ($10,000).

N.C.G.S. § 97-31(24) (1985). Defendants argue this section does not authorize compensation for plaintiff's injury because compensa-

Little v. Penn Ventilator Co.

tion is payable for eye injuries under subdivisions (16) and (19) of the schedule.[2] We agree completely with the Court of Appeals that "[t]his argument is without merit" for the reasons stated in Judge Eagles' opinion:

> Subsections (16) and (19) of G.S. 97-31 by their very terms contemplate some loss, either of the eye itself or of the vision in an eye. While plaintiff here has unquestionably sustained a permanent injury to his eye, the evidence at the time of his hearing shows, and the Commission found, that he did not lose the injured eye or suffer any loss of vision. Since plaintiff's injury is not specifically encompassed by subsection (16) or (19) or any other subsection of G.S. 97-31, subsection (24) was the appropriate basis for the Commission's award.

*Little v. Penn Ventilator Co.*, 75 N.C. App. at 95, 330 S.E. 2d at 278.

[6] Plaintiff disputes the award because he says $2,500 is not adequate compensation for permanent injury to his eye. The word selected by the legislature to invest the Commission with authority to make awards under N.C.G.S. § 97-31(24) is significant. In construing companion provisions in N.C.G.S. § 97-31 which provide compensation for disfigurement,[3] this Court has said where

---

2. These subdivisions provide in pertinent part:

"(16) For the loss of an eye, sixty-six and two-thirds percent (66⅔%) of the average weekly wages during 120 weeks."

"(19) [L]oss of use of a member or loss of vision of an eye shall be considered as equivalent to the loss of such member or eye. . . ."

3. "(21) In case of serious facial or head disfigurement, the Industrial Commission shall award proper and equitable compensation not to exceed ten thousand dollars ($10,000). In case of enucleation where an artificial eye cannot be fitted and used, the Industrial Commission may award compensation as for serious facial disfigurement.

"(22) In case of serious bodily disfigurement for which no compensation is payable under any other subdivision of this section, but excluding the disfigurement resulting from permanent loss or permanent partial loss of use of any member of the body for which compensation is fixed in the schedule contained in this section, the Industrial Commission may award proper and equitable compensation not to exceed ten thousand dollars ($10,000)."

N.C.G.S. § 97-31(21), (22) (1985).

the statute provides that the Commission "may" award compensation for bodily disfigurement, the Commission has discretion whether to award compensation; but where the statute provides that the Commission "shall" award compensation, the Commission has no choice but to award proper and equitable compensation. *See Davis v. Construction Co.*, 247 N.C. 332, 101 S.E. 2d 40 (1957). By employing the word "may" in N.C.G.S. § 97-31(24) the legislature intended to give the Industrial Commission discretion whether to award compensation under that section.

[7] While the Commission has discretion whether in the first instance to make an award, if it does make an award it must make a proper and equitable one. The Commission has no discretion to make an improper or inequitable award. What constitutes a "proper and equitable award" calls for the exercise of judgment and balancing. We believe, therefore, the decision regarding the amount of compensation should be left to the sound discretion of the Industrial Commission. Accordingly, its decision will not be overturned on appeal absent an abuse of discretion on its part.

The abuse of discretion standard of review is applied to those decisions which necessarily require the exercise of judgment. The test for abuse of discretion is whether a decision "is manifestly unsupported by reason," *White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985), or "so arbitrary that it could not have been the result of a reasoned decision." *State v. Wilson*, 313 N.C. 516, 538, 330 S.E. 2d 450, 465 (1985). The intended operation of the test may be seen in light of the purpose of the reviewing court. Because the reviewing court does not in the first instance make the judgment, the purpose of the reviewing court is not to substitute its judgment in place of the decision maker. Rather, the reviewing court sits only to insure that the decision could, in light of the factual context in which it is made, be the product of reason.

[8] We cannot say in this case that the Commission's award has no rational basis in the facts. Plaintiff has received a serious, permanent eye injury which places him at great risk for future complications. Plaintiff has not yet suffered any loss of vision nor has he suffered any decrease in earning ability. The extent of his future complications as well as his prognosis if they should arise

lie outside the realm of certainty. We are not inclined to substitute our judgment for that of the Commission.

For all the foregoing reasons the decision of the Court of Appeals, insofar as it affirmed the Commission's award of $2,500 for plaintiff's eye injury, is affirmed; but the decision, insofar as it reversed the Commission's award of future medical expenses, is reversed. The result is that the Commission's award is in all respects reinstated.

Affirmed in part and reversed in part.