Pursuant to the Order, the parties submitted depositions of Odessa Rhodes, Nathaniel Jones, Keith Simuel, Walter Marvels and the plaintiff, and additional medical records from plaintiff's treating physician, Dr. Robert Kline, M.D., and the Memorial Mission Hospital emergency room. The stipulated medical records consist of February 14, 1991 emergency room notes from Memorial Mission Hospital, Dr. Kline's patient notes from his follow-up visit with plaintiff on February 18, 1991 (which also appears among the exhibits to the hearing transcript at pps. 135-136), and a letter from Dr. Kline dated April 5, 1995.
Plaintiff had been compensated for a period of disability caused by pain in her left leg following a fall on her back in late July, 1990. Before the Deputy Commissioner, the plaintiff alleged that she reinjured her back in March, 1991, while pushing a dumpster with a co-worker, Odessa Rhodes. Ms. Rhodes did not testify at that hearing (although it appears from her deposition that counsel for both parties made an effort to ascertain beforehand what her testimony might be). At hearing, defendants moved to set aside the From 26 agreement approved in respect to this claim, alleging that plaintiff's disability resulted solely from an assault, based primarily on a medical note dated February 18, 1991 (Tr. Exh. p. 135) and the lack of contemporaneous medical records mentioning the dumpster incident. The hearing Deputy denied plaintiff's claim for additional benefits based on findings that, "while walking down some steps on or about January 14, 1991, after getting upset with her boyfriend" she suffered an injury to her back "upon turning quickly to go downstairs after an argument with her boyfriend", and "developed a sudden, sharp catch in her left hip and low back radiating down her left leg to the calf", and that she went to the emergency room, and to Dr. Kline on the 18th, complaining of these problems. The Deputy Commissioner found that plaintiff's attribution of her back problems to a dumpster incident was not credible, and that her disability in March, including temporary total disability continuing from March 18, 1991 — the subject of the Form 26 agreement — was not related to her prior compensable injury of July 25, 1990. He was persuaded that plaintiff had no appreciable consequences of the July, 1990 injury after she returned to work. Finding that the failure to disclose an injurious incident in February, 1991 constituted a misrepresentation by the plaintiff, he set aside the Form 26 agreement per N.C. Gen. Stat. § 97-17. With the benefit of the additional evidence, we reverse.
The emergency room receiving nurse paraphrased the plaintiff's complaints on January 14, 1991 as follows: "hip pain[;] elbow pain[.] I don't know if I have a pinched nerve or what, but my [left] hip hurts all the way down to my foot. Its throbbing — and [right] elbow has hurt since [Christmas] its getting worser — [.] [? No allergies to drugs] — no recent trauma or lifting." The ER physician noted, "strained low back 
hip last night", but did not suggest how. X-rays impressed the radiologist as being "essentially negative" of the lumbar spine, and portraying a "small calcified lesion" at the right elbow that could be "a spur, an old fracture, or possibly a small calcified joint mouse."
Dr. Kline's letter was written "to clarify a statement made" in his February 18, 1991 notes, i.e., that "four days prior to the office visit while walking down her steps after getting upset with her alcoholic boyfriend, she experienced a sudden sharp pain in her left hip and low back area radiating down . . . her left leg and calf." Noting that he had been told by the plaintiff that "based on this office visit, conclusions were drawn as to physical abuse inflicted upon her by this boyfriend", he concludes the letter by stating: "I received no information in that respect but rather simply that she had been upset. I had no subjective or objective evidence of abuse nor had I concluded that in my notes."
Ms. Rhodes testified that she began work with the defendant in August of 1990, and remained so employed at the time of her deposition. She recalled that plaintiff, her crewleader, "had hurt her leg before I came there", and that she complained to co-workers of leg pain. (Depo. of Rhodes, pps. 4, 7, 12, and 14.) She recalled plaintiff discussing her domestic problems in front of her husband and son on January 18, 1991 — a date she remembered precisely because this occurred as they went together to the first annual meeting for the company's employees at the Grove Park Inn that Ms. Rhodes had attended. ("It impressed me".) She thought that plaintiff had said "something about her boyfriend pushing her down some steps." She did not recall plaintiff indicating whether she had been hurt or not, but plaintiff attended the gathering that night at the Grove Park Inn, and "partied after the Grove Park" with Ms. Rhodes, and Ms. Rhodes apparently could not recall plaintiff having difficulty with her work, other than "I thought, with her leg." She also recalled pushing a dumpster with Ms. Marvels around early 1991. The man who usually moved the dumpster ("Ed") was out, and plaintiff had asked her help pushing it "out to the street." When they came back inside, their supervisor "Ron" (i.e., Ronald E. Coates) "jumped on both of us for doing that, and it made me very nervous, because me being a new employee." She first became aware that plaintiff had a problem with her back (as opposed to her leg) "when she was in the hospital or going into the hospital." She could recall plaintiff discussing the dumpster in connection with her back pain, but could not recall when she pushed the dumpster with plaintiff in relation to her hospitalization, or even the Grove Park Inn meeting.
Plaintiff's boyfriend, Nathaniel Jones, 58, a mason, had lived with her for "a long time before" the period in question, and remained there at the time he was deposed in April, 1995. He testified that they had had arguments, but that he had never struck or pushed her. Plaintiff's two grown sons, Keith Simuel and Walter Marvels, also shared the household with plaintiff and Mr. Jones throughout this period — Walter Marvels testified in 1995 that he had been there "7-8 years". The sons also denied any pushing, or physical violence against their mother by Jones (". . . [H]e knows what the consequences would be if he ever did that"). All three men readily admitted that the couple had what they considered normal arguments. None could recall specifically an argument around February 18, 1991.
Plaintiff testified that Mr. Jones had never been violent toward her. She described an occasion (outside the subject time frame) when Mr. Jones had "been drinking a couple of beers", resulting in an argument because "I don't like for him to drink." During the argument, plaintiff struck her wrist or arm against her refrigerator. She visited Dr. Kline's office that day or the next, and he had x-rays made shortly thereafter. She strongly denied that Mr. Jones had ever hit her, mentioning that her sons were also at their home.
Yvonne Johnson, a clinical social worker, testified prior to the hearing before the Deputy Commissioner that plaintiff had been diagnosed as having "major depression secondary to chronic physical problems" in December, 1991, had been counseled by her since April 9, 1992, and was receiving anti-depressants through her medical doctors. She testified that plaintiff's difficulties arose from the "injury . . . and she can't work, and all that's really tied into her self-esteem and sense of self-worth, because Maxine's concept of self as being a working, productive person." Counsel had access to her clinic's records, and Ms. Johnson made no reference to domestic violence. While the plaintiff was a patient at the St. Joseph's (Hospital) Pain Clinic, the Commission's rehabilitation nurse following the case noted that her physician had concerns about stress caused by "dysfunctional" aspects of her household relating to her sons, worry that she might lose her job and that a co-worker was supplanting her, and "the anniversary of her mother's death and her daughter's stabbing." There was no reference to domestic violence.
To all appearances, Ms. Rhodes was a disinterested witness, but she was deposed four years after the events critical to deciding defendant's motion to set aside the Form 26 agreement, and at a time when she was personally affected by the recent loss of four friends. (Depo. of Rhodes, p. 12.) Her most salient recollection is the date when plaintiff discussed domestic problems in front of her family on the way to the Grove Park Inn. The boyfriend/steps incident description certainly fits the defense theory, but the timing — a month before her February, 1991 visit to the ER and Dr. Kline — does not. Ms. Rhodes continued to work for the defendant through the time of the deposition and had talked to counsel about the case back before the hearing. (Depo. of Rhodes, pps. 8-9.) Plaintiff continued to work for three weeks after the February incident, but not after the dumpster incident, which her supervisor's testimony also tends to confirm. Tr. pps. 152 and 157-61. In light of all the other evidence, her physicians' failure to note the dumpster incident is most likely due to the fact that physicians treat conditions, not "accidents", that such a "specific traumatic incident" did not impress them as something apart from plaintiff's long-term, ongoing complaints, particularly since she had a hard time understanding how her back could cause the worsened symptoms in her leg (Tr. Exh. pps. 169-70), and the considerable list of her other physical problems that took their attention. What is very clear from this record is that, when Ms. Marvels was capable of working, she did work. She continued to work after the February 14 incident and the x-rays at that time were normal. She was not capable of carrying out her normal work after the dumpster incident in early March, and a disk bulge was found in April. Tr. Exh. pps. 144-45. Consequently, with the benefit of the additional evidence he did not have, we reverse the Deputy Commissioner's decision.
Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner, and finds as facts the following:
STIPULATIONS
The Form 21 and 26 Agreements, having been approved by the Commission, constitute awards of record and the same are incorporated herein by reference. In addition, the parties stipulated to the following matters: A Form 24 dated December 11, 1992; medical reports identified and attached to a two-page document entitled "Stipulation" which is dated October 4, 1993 and is signed by counsel; medical reports identified and attached to a three-page document entitled "Stipulation" which is signed by counsel; and a Form 33 and 33R as set forth in Ms. King's letter dated March 25, 1993. The depositions of Odessa Rhodes, Nathaniel Jones, Keith Simuel, Walter Marvels and the plaintiff, and additional medical records from plaintiff's treating physician, Dr. Robert Kline and the Memorial Mission Hospital emergency room, submitted pursuant to the Commission's order reopening the evidence, are admitted into the record.
* * * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff, who was 49 years old at the time of the Deputy Commissioner's decision and had a high school education, has a vocational history of having performed custodial work all her life, and as of July 1990, had been so employed by defendant employer for about four years. On February 14, 1991, she was 46 years old and weighed 230 pounds.
2. Plaintiff fell twice at work in July, 1990 (Tr. Exh. p. 32). She slipped on a waxed floor and fell, hitting the patella part of her knee. About three weeks later, on or about July 25, 1990, she tripped over a vacuum cleaner cord and fell on her back. Thereafter, during the remainder of her employment with the defendant, she complained to co-workers of leg pain. (Depo. of Rhodes, pps. 4, 7, 12, and 14.) While a back problem was suspected (Tr. Exh. p. 13), her treating physician, Dr. Kline, believed that the pain resulted from a direct injury of the leg. While plaintiff had difficulty understanding how her relatively mild back pain related to her leg pain, even after her injury in March, 1991 (Tr. Exh. pps. 169-70), it is more probable than not that plaintiff suffered some damage to her back at on about the L4-5 interspace, causing pain to radiate into her lower left leg in the dermatomes associated with that portion of the spine.
3. When she was next seen by Dr. Kline on August 6, 1990, he continued her on physical therapy and medications and prescribed an orthotic foot device. Her acute left calf pain thereafter resolved with physical therapy and the orthotic foot device, permitting her to return to work on August 13, 1990 as a custodian for defendant employer after an absence of about two weeks. Plaintiff was paid temporary total disability benefits pursuant to an approved Form 21 agreement for this period of disability. Dr. Kline also was treating the plaintiff for hypertension, asthma, a cyst and other problems unrelated to the injury.
4. Plaintiff was an honest and extraordinarily diligent worker, despite her health problems, was concerned about keeping her job, and never complained to her supervisor about the work assigned her. She undertook tasks for her employer on her own initiative. (Tr. pps. 11-14, 151-152, 154, 156 and 158.)
5. During an animated argument with her boyfriend on February 14, 1991, the plaintiff felt pain in her back and leg and thereafter was seen at the emergency room and by Dr. Kline on February 18. An x-ray on February 14, 1991 was normal, and plaintiff was able to resume her work duties until the injury on or about March 7, 1991. Plaintiff was not assaulted and did not fall on February 14, 1991. Her onset of symptoms and any permanent exacerbation of her back condition on that date occurred as a natural and probable consequence and progression of her pre-existing back condition.
6. When seen by Dr. Kline on February 18, 1991, plaintiff reported that her debilitating calf pain had improved with physical therapy and the orthodic foot device, and that she had returned to work on August 9, 1990. Plaintiff further reported to Dr. Kline that while walking down some steps on or about February 14, 1991 after getting upset with her alcoholic boyfriend, she experienced a sudden, sharp catch in her left hip and low back pain radiating down the posterior aspect of her left leg and calf. On or about that same date, she had been evaluated for those problems at the emergency room at which time x-rays were taken of her back, left leg, and right elbow, and she was placed on medications. Plaintiff noted to Dr. Kline that the left leg pain was improved and that rest had improved her low back pain. Findings on examination included full range of motion of her back with slight pain on full flexion and minimal paraspinal muscle spasm, mild tenderness over the left greater trochanter, and mildly tender popliteal space. He continued her on medications, added a medication for spasm, and planned to re-evaluate her in two weeks.
7. On or about March 7, 1991, the plaintiff and Odessa Rhodes were pushing a dumpster in the course and scope of plaintiff's employment with the defendant when her lower back began to hurt. As a result of this specific traumatic incident, she could hardly straighten up due to back pain the following day and was unable to work. She sought treatment at the emergency room, and since that time has not had the capacity to earn the wages of her former employment, and has earned wages only in brief failed work attempts. (Tr. Exh. p. 19.)
8. When next seen by Dr. Kline on March 7, 1991, she reported that her left calf and hip pain were persisting and that they were worse with prolonged standing and walking. He did not record a history of her injuring her back while moving a dumpster at work. She returned to work on the 10th, but was unable to work on and after March 18, 1991. On examination of her back, it was non-tender, there was full range of motion, and straight leg raising was negative bilaterally. In addition, there was full range of motion of the hip, but there was moderate tenderness over the left hip and left greater trochanter. Treatment rendered included continuation of medications, and on or about March 12, 1991, Dr. Kline requested an orthopedic evaluation of plaintiff by Dr. Dement.
9. As a result of the specific traumatic incident on or about March 7, 1991, plaintiff has suffered leg and back pain, disability and consequential depression, and has been incapable of earning wages through the date of the hearing before the Deputy Commissioner. (Depo. of Dr. Mahoney, p. 15.)
10. When seen by Dr. Dement on March 15, 1991, plaintiff gave a history of increasing weakness and pain in the left calf and thigh and a history of having fallen in July 1990 and a few months later. Her complaints included left calf and thigh pain and a little back pain. Again, there was no recorded history of injuring her back while moving a dumpster at work in March 1991. Following examination, Dr. Dement recommended an MRI scan because of probable L5-S1 left herniated nucleus pulposus. Based on results of the MRI and other diagnostic tests, Dr. Dement recommended a pain therapy-work hardening program.
11. When seen March 28, 1991 by Dr. Rardin on referral from Dr. Dement, plaintiff reported a history of two falls in July 1990 and since that time complained of pain in her posterior thigh which radiated down her leg and into her foot.
12. In March 1991 adjuster Jessica Ellis spoke with the plaintiff, and thereafter with Alice Switzer, defendant employer's personnel director, about plaintiff's description of her injuries. Ms. Ellis and Ms. Switzer decided to treat the March, 1991 dumpster incident as a change of condition by reopening her claim involving the July 25, 1990 injury by accident, rather than as a new claim. Plaintiff had advised Switzer that she had gotten hurt when she slipped and fell in July 1990, that she later got her leg caught in a vacuum cleaner cord, and that she had a third incident in March 1991 moving a dumpster. In particular, plaintiff stated to Switzer that in March 1991 she moved a dumpster at work and hurt her back. In addition, in March 1991 plaintiff told Ellis that she had reinjured her back on the job and related her conditions to incidents involving the trip on the vacuum cleaner cord and the dumpster. Based upon these conversations and circumstances, and contrary to defendant carrier's normal procedure, Ellis prepared the Form 26 Agreement without the benefit of medical records.
13. Following her discussion with Switzer and plaintiff, Ellis reopened plaintiff's claim as a change of condition from her July 25, 1990 injury by accident and prepared a Form 26 Agreement which was dated May 16, 1991, was signed by the parties, and was approved by the Commission on July 3, 1991. Pursuant to the Form 26 Agreement and Award, defendants undertook to pay compensation to plaintiff for temporary total disability benefits for March 8-9, 1991, and again beginning March 18, 1991 and continuing for necessary weeks. Except for a period of about two weeks of part-time employment with defendant employer and another failed work attempt in 1991, plaintiff has not worked for wages since March 17, 1991.
14. As a consequence of her injury on or about March 7, 1991, plaintiff suffered from "major depression secondary to chronic physical problems" by December, 1991, for which counseling, anti-depressant medications and associated therapies have been reasonably necessary. These difficulties arose from the subject "injury . . . [because] she can't work, and all that's really tied into her self-esteem and sense of self-worth, because Maxine's concept of self as being a working, productive person."
15. Subsequent to and as a result of her compensable accidents in July, 1990 and on or about March 7, 1991, plaintiff has been appropriately examined, evaluated, and treated by the health care providers mentioned herein, and Drs. Maloney, Hoski, Muir and Van Blaricom, and Yvonne Johnson, a clinical social worker, and St. Joseph's Pain Clinic, for low back pain, leg pain, and anxiety, depression, and associated emotional impairments, which services have provided plaintiff with relief. Tr. Exh. pps. 21-3 and 127. The providers chosen by the plaintiff rendered timely services not provided by the defendants, and plaintiff sought Commission approval of their services within a reasonable time.
* * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff is entitled to temporary total disability benefits as a result of disabilities suffered due to the specific incident on or about March 7, 1991, less credit for benefits heretofore paid and wages since received from defendants. N.C. Gen. Stat. §§ 97-2(6); 97-29.
2. The Form 24 Application to Stop Payment of Compensation was improvidently approved on December 11, 1992. N.C. Gen. Stat. § 97-29.
3. The parties Form 21 Agreement, approved by the Commission on July 3, 1991, was not shown to be procured by fraud, misrepresentation, undue influence or mistake of fact, and remains a valid award of the Commission. N.C. Gen. Stat. § 97-17.
4. Plaintiff is entitled to medical compensation services reasonably necessary to give relief from the consequences of the injury by accident on March 7, 1991, including those rendered prior to the date of the hearing by the health care providers mentioned herein, and Drs. Hoski, Muir, Maloney and Van Blaricom, and Yvonne Johnson, a clinical social worker, the Blue Ridge Community Mental Health Center, and St. Joseph's Pain Clinic, which gave plaintiff relief, and for which approval by the Commission was timely sought. N.C. Gen. Stat. §§ 97-25; 97-2(19);97-2(20); Forrest v. Pitt Co. Bd. of Education, 100 N.C. App. 119,127, 394 S.E.2d 659 (1990); Little v. Penn Ventilator Co.,317 N.C. 206, 212-16, 345 S.E.2d 204 (1986).
* * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants' Motion to Set Aside the Form 21 Agreement of July 3, 1991 must be, and hereby is, DENIED.
2. Defendants shall pay plaintiff temporary total disability benefits from March 8, 1991, through the date of the hearing before the Deputy Commissioner, and continuing during her disability, less credit for sums heretofore paid and wages paid during her failed attempt to return to work in 1991, subject to the attorney's fee hereinafter approved. Sums accrued shall be paid in a lump sum.
3. Defendants shall pay the bills for medical compensation reasonably necessary to give relief from the consequences of the accident on or about March 7, 1991, when the same have been submitted to the carrier and approved in accordance with the rules of the Commission.
4. A reasonable attorney's fee of 25% of compensation paid is approved for plaintiff's counsel of record, and 25% of the accrued benefits and each future fourth check for compensation shall be paid directly to him.
5. Defendants shall pay the costs due this Commission, including an expert witness fee in the amount of $95.00 to Yvonne Johnson.
 S/ ___________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________ COY M. VANCE COMMISSIONER
JRW/jss/md/rw 12/30/96