* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employment relationship existed between plaintiff and defendant-employer on May 8, 2001.
4. Builders Mutual Insurance Company was the carrier on the risk on May 8, 2001.
5. Plaintiff's average weekly wage is $367.50, yielding compensation rate of $245.01 per week.
6. Plaintiff claims an injury by accident to his left leg, left arm, neck and back. Plaintiff's disability began on May 8, 2001, the date of the injury by accident. Defendants accepted this claim as compensable and plaintiff is receiving ongoing total disability compensation at the compensation rate of $245.01 per week.
7. The following were stipulated into evidence at the hearing before the Deputy Commissioner:
 a. Stipulated Exhibit #1: Stipulated Exhibits for Hearing, with Table of Contents and medical documentation numbered from 1-323.
 b. Stipulated Exhibit #2: I.C. Forms.
 c. Pre-Trial Agreement.
8. The issues before the Full Commission are what additional benefits, medical compensation, and other remedies, if any, plaintiff is entitled to receive for the injury by accident on May 8, 2001, and whether the treatment by Dr. O. Del Curling and Dr. Chad J. Prusmack is reasonably related to plaintiff's original compensable injury of May 8, 2001.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 47 years of age with a ninth grade education. He worked for defendant-employer as a laborer-carpenter for approximately 12 years, until the date of his injury by accident on May 8, 2001.
2. Plaintiff was injured when he fell off a scaffold while installing rafters in a house. When plaintiff fell from the scaffold, he landed on his left side and suffered an injury to his left leg resulting in a tibial plateau fracture and internal damage to the knee. He also suffered an injury to his left shoulder. Plaintiff's leg required immediate surgery on May 8, 2001. Dr. G. Scott Dean performed an open reduction internal fixation of left tibial plateau fracture with lateral meniscectomy.
3. Dr. Dean provided plaintiff follow up care and treatment after surgery. Plaintiff was non-weight bearing on his left leg and was referred to physical therapy. By June 2001, Dr. Dean diagnosed plaintiff as having rotator cuff symptoms in his left shoulder. Plaintiff's recovery from his injuries was slow and he continued to suffer chronic severe pain in his left leg. Plaintiff continued in physical therapy with a knee brace and had significant quadriceps and hamstring weakness.
4. On January 22, 2002, plaintiff saw Dr. Frank Rowan for a second opinion. Dr. Rowan indicated that plaintiff might have RSD, or complex regional pain syndrome. He also recommended additional testing to see if a total knee replacement surgery might be helpful for plaintiff.
5. When plaintiff returned to Dr. Dean in February 2002, Dr. Dean recommended EMG/nerve conduction studies to evaluate plaintiff's quadriceps and hamstring weakness.
6. Defendant-carrier referred plaintiff to Dr. Thomas L. Heil, a pain management specialist. Dr. Heil diagnosed plaintiff with complex regional pain syndrome of the left lower extremity and recommended a series of lumbar sympathetic nerve blocks and additional medications. Dr. Heil also began plaintiff on anti-depressant medications. Dr. Heil performed the lumbar sympathetic blocks, but plaintiff had only minimal pain relief. Dr. Heil also discussed a spinal cord stimulator or morphine pump, but felt that plaintiff had a cognitive deficit and was uncertain whether plaintiff could manage the pump properly.
7. By July 5, 2002, Dr. Heil felt that there was not anything further he could recommend for plaintiff's leg and he released plaintiff from his care at maximum medical improvement with a 40% permanent partial disability rating to his left leg. Dr. Heil indicated in his final report that plaintiff would require a brace for stability and that he had significant muscle atrophy and severe neuropathic pain.
8. On September 4, 2002, plaintiff returned to Dr. Dean, who recommended an MRI of plaintiff's shoulder and back. The MRI of the shoulder showed a left subscapular rotator cuff tear with muscle atrophy, rotator cuff impingement, and SLAP II tear of the labrum. The MRI of the back showed grade II spondylolisthesis of L5-S1 resulting in bilateral foraminal stenosis.
9. Plaintiff was referred to Dr. O. Del Curling on January 7, 2003, for his back condition. Dr. Curling thought plaintiff's main problems were the left leg injury, his complex regional pain syndrome, and his left rotator cuff injury. He did not recommend back surgery at that time. Dr. Curling did predict that plaintiff's lower extremity dysfunction with his altered gait pattern and pelvic tilt would cause his lower back to become very symptomatic.
10. In January 2003, plaintiff was referred to Dr. Mark Phillips for pain management treatment, and, in March 2003, he was referred to Dr. Martha Simpson for a psychological evaluation. Dr. Simpson diagnosed plaintiff with adjustment disorder with mixed anxiety and depression. Plaintiff followed up with Dr. Simpson for pain coping skills.
11. In July 2003, plaintiff started treating with psychiatrist Dr. Michael McClure. Plaintiff also had ongoing treatment with Dr. Phillips.
12. In March 2004, plaintiff returned to Dr. Dean. On May 10, 2004, Dr. Dean released plaintiff from his care, indicating that plaintiff's knee was stable. Dr. Dean gave plaintiff a 50% permanent partial disability rating of the left leg and a 20% permanent partial disability rating to his left shoulder. Dr. Dean believed that plaintiff's left shoulder was inoperative due to his smoking and general poor health. As of May 10, 2004, Dr. Dean felt that plaintiff was not at maximum medical improvement with regard to his back.
13. On June 21, 2004, plaintiff returned to Dr. Curling. Dr. Curling recommended a decompression, fusion, and fixation procedure at L5-S1 due to severe compression of the right L5 nerve root causing foot drop and parathesias. Dr. Curling indicated that plaintiff's back condition and his need for surgery was directly related to the compensable injury on May 8, 2001.
14. On September 24, 2004, plaintiff was seen by Dr. Chad J. Prusmack, who concurred with Dr. Curling's diagnosis and the recommendation for decompression and fusion surgery at L5-S1. However, Dr. Prusmack moved his practice out of state before he could schedule or perform surgery on plaintiff.
15. On November 9, 2004, Dr. Henry Elsner evaluated plaintiff, at the direction of defendants. Dr. Elsner concluded that plaintiff presented a poor risk for surgical intervention and he declined to perform the recommended surgery.
16. At his deposition, Dr. Dean testified that plaintiff's original injury to the left knee was very significant because he suffered a tibial plateau fracture, which is a fracture of the weight-bearing portion of the knee bone. In addition, plaintiff had a tear of the lateral meniscus cartilage that could not be repaired. Dr. Dean confirmed that in January 2003, plaintiff was still ambulating with some type of assisted device and he had an antalgic gait when he walked. When Dr. Dean last saw him on May 10, 2004, plaintiff was still using a walker to ambulate. He felt plaintiff was not at maximum medical improvement from his back condition. Dr. Dean stated that plaintiff could not return to any type of employment based upon his whole medical condition, taking into account his leg, back, and shoulder.
17. Dr. Curling testified that between his evaluations of plaintiff on January 7, 2003, and June 21, 2004, there were significant changes indicating that plaintiff had pressure on the L5 nerve root on the right. While plaintiff's back condition was relatively asymptomatic in January 2003, by June 2004 he was having significant symptoms, including mechanical back pain, radicular leg pain, and a foot drop on the right. Dr. Curling considered the foot drop to be a significant disability and recommended a decompression-fusion-fixation surgery at L5-S1. Dr. Curling testified that plaintiff's work related injury resulted in a significant knee injury, which subsequently aggravated his pre-existing spondylolisthesis and led to the onset of back symptoms. Dr. Curling specifically stated and the Commission finds that although fusion surgery would not eliminate plaintiff's left leg problems and may aggravate his chronic regional pain syndrome, there is an 80% chance it would help plaintiff's back pain and improve his right foot drop. Dr. Curling explained that plaintiff's foot drop was "not an emergency but an urgency," and that the longer a patient has a foot drop, the worse the prognosis for permanent damage. Dr. Curling recommended the fusion surgery despite plaintiff's serious left knee injury, chronic regional pain syndrome, tobacco use, and the fact that it had been a year since he made the initial recommendation for surgery. He also commented that plaintiff needed the surgery even if the record supported that plaintiff had been non-compliant with some other treatment in the past. He also noted that plaintiff reduced his smoking from four to two packs of cigarettes per day. Dr. Curling felt that while plaintiff might be simple-minded and stubborn, he was cognitively competent to make treatment decisions.
18. The Full Commission gives great weight to the testimony of Dr. Curling and Dr. Prusmack than to Dr. Elsner regarding whether plaintiff requires a decompression-fusion, fixation surgery at L5-S1. Dr. Curling's testimony is undisputed that plaintiff's work related injury resulted in a significant knee injury, which subsequently aggravated the pre-existing back condition of spondylolisthesis and led to the onset of back symptoms.
19. At the time of the Deputy Commissioner's hearing, plaintiff was not at maximum medical improvement for his back. Plaintiff is in need of further surgical treatment and follow-up care, as recommended by Dr. Curling. The low back fusion surgery is treatment needed to provide relief for plaintiff's compensable back condition.
20. Dr. Dean and Dr. Curling have provided reasonable and necessary evaluations and treatment for plaintiff and are hereby designated as plaintiff's authorized treating physicians. Plaintiff is entitled to receive his future medical treatment related to his left leg, left arm, and back from Dr. Dean and Dr. Curling, or other physicians upon their referrals, at the expense of defendants.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 8, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in injuries to his left leg and left arm. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence of record establishes that plaintiff's back conditions are directly and causally related to his injury by accident on May 8, 2001. Parsons v.Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
3. N.C. Gen. Stat. § 97-25 requires employers to pay the expenses of plaintiff's future medical treatments as long as they are reasonably required to effect a cure or give relief. Littlev. Penn Ventilator Co., 317 N.C. 206, 345 S.E.2d 204 (1986). In addition, relief from pain is a legitimate aspect of the "relief" anticipated by future medical treatment under N.C. Gen. Stat. §97-25. Simon v. Triangle Materials, Inc., 106 N.C. App. 39,415 S.E.2d 105, cert. denied, 332 N.C. 347, 421 S.E.2d 154 (1992). Thus, plaintiff is entitled to all medical expenses incurred or to be incurred as a result of the compensable injury to his left leg, left arm and back, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Plaintiff is also entitled to additional and future medical treatment, including but not limited to, treatment for his left leg, left arm, and back, and specifically, the surgical decompression and spinal fusion of his back with fixation at L5-S1 as recommended by Dr. Curling and Dr. Prusmack. Plaintiff is entitled to receive his future medical treatment related to his left leg, left arm, and back from Dr. Dean and Dr. Curling, or other physicians upon their referrals, at the expense of defendants. N.C. Gen. Stat. §§ 97-19; 97-25.
4. As a result of his compensable injury, plaintiff has been out of work and completely unable to earn wages in employment since May 8, 2001. Plaintiff is entitled to the payment of temporary total disability compensation by defendants at the compensation rate of $245.01 beginning May 8, 2001 and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fee awarded below, defendants shall pay plaintiff temporary total disability compensation at the compensation rate of $245.01 per week beginning May 8, 2001 and continuing until plaintiff returns to work or until further order of the Commission.
2. Defendants shall pay for plaintiff's reasonable future medical expenses related to his injury of May 8, 2001, including but not limited to, treatment for his left leg, left arm, and back, and specifically, his future surgical decompression and spinal fusion of his back with fixation at L5-S1 as recommended by Dr. Curling and Dr. Prusmack. The surgical decompression and spinal fusion and other future medical treatment for plaintiff's back shall be provided by Dr. Curling or by a specialist upon the referral of Dr. Curling. Future medical treatment for the left leg and left arm shall be provided by Dr. Dean or another qualified physician upon the referral of Dr. Dean.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, which include an expert witness fee of $415.00 to Dr. Scott Dean and $425.00 to Dr. O. Del Curling, if not paid by prior order.
This 5th day of September 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER