Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and the defendant-employer on August 25, 1995.
3. The Travelers Insurance Company is the compensation carrier on the risk.
4. Plaintiff's average weekly wage as set forth in the I.C. Form 22 (wage chart) is $245.21, which yields a compensation rate of $163.48 per week.
5. Plaintiff is alleging an injury by accident on August 25, 1995, resulting in an injury to her back.
6. Defendants admit that plaintiff slipped and fell at work on August 25, 1995, but deny that plaintiff suffered a compensable injury as a result of the fall. Consequently, defendants are denying liability for this claim.
7. Plaintiff's last day of work with the defendant-employer was October 2, 1995.
Based upon all of the competent evidence of record, the Full Commission ADOPTS IN PART and MODIFIES IN PART the findings of fact of the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff suffered an injury at work on August 25, 1995 when she slipped on a piece of paper and fell, injuring her lower back, She was sent by her employer to be examined by Dr. Robert Hart III, a practicing physician in industrial medicine. Dr. Hart's initial diagnosis was acute back strain and he placed certain restrictions on plaintiff's capacity to work. Plaintiff was unable to work as a result of her injury August 28th and 29th and returned to work on August 30th. Plaintiff tried to work as best she could with the aid of medication for pain and to relax her muscles. At the direction of the carrier, plaintiff continued to treat with Dr. Hart with no apparent alleviation of her pain. She was referred to Dr. Grey Winfield III, an orthopaedic specialist, on September 11, 1995.
2. Dr. Winfield first saw plaintiff on September 12, 1995, at which time plaintiff continued to complain of back pain as well as pain and numbness in both legs. Dr. Winfield diagnosed plaintiff as having a lumbar spine injury for which he restricted plaintiff's work and prescribed aerobic conditioning and physical therapy. Dr. Winfield further anticipated that plaintiff would experience future problems with her back and opined that her "prognosis for complete recovery is guarded." He also said that plaintiff should continue to work.
3. Defendants admit that plaintiff slipped and fell at work on August 25, 1995, but deny that plaintiff suffered a compensable injury as a result of the fall. Consequently, defendants are denying liability for this claim, but they authorized the medical treatment that plaintiff received from Dr. Hart and Dr. Winfield.
4. Experiencing continuous pain from the injury to her lower back, plaintiff presented to Dr. John de Perczel, an orthopaedic specialist, for a second opinion concerning her injuries on September 20, 1995.
5. On September 27, 1995, Dr. Winfield changed his opinion of plaintiff's prognosis, stating that "no permanent disability is anticipated," and he released plaintiff to return to her regular job without restrictions. Dr. Winfield indicated on September 27th that he did not think any further treatment was indicated. Plaintiff was not given a return appointment.
6. Plaintiff returned to work, but let her employer know that she disagreed with Dr. Winfield's assessment. According to plaintiff, she worked until her pain got so bad she could not stand it anymore. Thereafter, she called to inform her employer that she was not able to work. The employer required a doctor's note in order to excuse plaintiff from work. Plaintiff testified that she produced an out-of-work excuse from Caldwell Family Physicians, but this excuse is not a part of the record.
7. Plaintiff was discharged by the employer-defendant October 2, 1995.
8. On September 29, 1995, plaintiff presented to Dr. David Sendroff, a Chiropractor, with complaints of back pain accompanied with pain and numbness in both legs. Dr. Sendroff's examination of plaintiff revealed severe muscle spasm in the erector spinae muscles in the lumbar spine, with decreased range of motion. He also found that the plaintiff had pain with both passive and active range of motion testing. Dr. Sendroff diagnosed plaintiff with a lumbosacral sprain/strain, with a differential diagnosis of "intersegmental dysfunction of the lumbar spine and a possible disc degeneration."
9. Prior to the hearing before the deputy commissioner, Dr. Sendroff had last seen plaintiff on November 1, 1995, at which time he advised her to seek treatment with an orthopaedic doctor of her choice.
10. Dr. de Perczel examined plaintiff on November 13, 1995. His examination revealed tenderness at the "LS junction," with straight leg raising producing buttock pain. Dr. de Perczel reviewed two MRIs, one from 1993 and the other from October of 1995. The first MRI showed a posterior bulging disk at L4-L5 with minor spinal stenosis. The more recent MRI showed a posterior bulging disk at L4-L5 with minor spinal stenosis. Dr. de Perczel's opinion, stated in his medical note of November 13, 1995, was that the plaintiff's injury in August 25, 1995 exacerbated the L4-L5 disk bulge which pre-existed the accident.
11. Plaintiff continued to treat with Dr. de Perczel. She also became more depressed about her inability to work and the continued pain in her lower back, hips and legs. On February 26, 1996, Dr. de Perczel advised plaintiff that he felt she had reached maximum medical improvement and gave her a disability rating of 10% to her back. Plaintiff was then released from Dr. de Perczel's care and instructed to exercise at home and take anti-inflammatories.
12. Still unable to cope effectively with her back pain and accompanying depression, plaintiff sought evaluation and treatment at the North Carolina Spine Center in Chapel Hill, North Carolina. She was first seen by Dr. Stephen Grubb, the Medical Director of the Spine Center on March 5, 1996. Upon physical examination, Dr. Grubb noticed plaintiff experiencing pain in the mid-lumbar spine as well as the "LS junction" in bilateral iliolumbar angles. X-rays revealed disc space narrowing at the L4-L5 and L5-S1 levels. Dr. Grubb's initial diagnosis was that plaintiff suffered from lumbar degenerative disc disease with stenotic symptoms. He also opined that "her 8/25/95 injury caused an exacerbation of a pre-existing condition, but probably was the sole cause of her symptoms."
13. Dr. Grubb's continuing treatment of plaintiff included a myelogram and post myelogram CT, a discogram, and a post discogram CT. These tests revealed abnormal discs at the L4-L5 and L5-S1 levels for which an L-4 to sacrum decompression with stabilization and fusion was recommended. After the benefits and risks of surgery were discussed with plaintiff, she elected to proceed with the surgery which was performed on June 10, 1996, after which plaintiff developed an inability to void and began experiencing severe constipation and bowel problems Other post-operative complications developed, including increased numbness in plaintiff's inner thighs, hip pain, bed-wetting, and drainage coming from her back wound.
14. Dr. Buckley, a urologist, upon consultation, prescribed various medications to help plaintiff restore proper function of her bladder. He further recommended that plaintiff self-catheterize to temporarily deal with her urinary problems.
15. On August 30, 1996, plaintiff was referred to Dr. Virginia Pact, a neurologist, who instituted pain-management treatment for the plaintiff. Plaintiff was taking Zoloft, an antidepressant and Tylenol with codeine when she first saw Dr. Pact. Upon examination, Dr. Pact concluded that plaintiff suffered from severe back pain and was very depressed as a result of that pain. Dr. Pact opined that plaintiff's back condition and its symptomology were caused by her fall in August of 1995. Dr. Pact's initial treatment plan was to increase plaintiff's antidepressant medication while attempting to withdraw use of Tylenol with codeine.
16. Dr. Pact continued to treat plaintiff through the date of hearing before the deputy commissioner. Dr. Pact has indicated that plaintiff is becoming increasingly depressed, accompanied with a suicidal impulse. Additionally, plaintiff is experiencing stress within her family that aggravates her depression. Prior to the hearing before the deputy commissioner, plaintiff last saw Dr. Pact on January 14, 1997, on which occasion Dr. Pact opined that the plaintiff "may need more aggressive measures, possibly including hospitalization." Plaintiff also continues to see a psychiatrist, Dr. Schmuth, in Hickory, North Carolina.
17. After her termination on October 2, 1995, plaintiff worked part-time as a cashier in a drug store and at a motel check-in desk. She has not worked at these jobs since her surgery on June 10, 1996. At the time of hearing before the deputy commissioner, plaintiff was not working and was suffering from low back pain, some urinary disturbance, and severe suicidal depression.
18. On August 25, 1995, plaintiff sustained an injury by accident arising out of and in the course of employment with defendant-employer when she slipped on a piece of paper and fell, causing injury to her lower back. Plaintiff's fall at work exacerbated her pre-existing disk bulge at L4-L5 and has caused continuous back pain and numbness in both legs.
19. Plaintiff's surgery on June 10, 1996 was causally related to and flowed directly from injuries she sustained from her fall at work on August 25, 1995.
20. Plaintiff's depression is causally related to her August 25, 1995 compensable injury.
21. Although the defendants take the position that plaintiff was not injured seriously and was released to return to work without restrictions, greater weight is given to the plaintiff's position.
22. The plaintiff is found to be a credible witness.
23. As a result of her injury due to her August 25, 1995 fall, her resulting pain and numbness, and her resulting surgery and depression; plaintiff has been incapable of earning wages in any employment from June 10, 1996 through the date of the hearing before the deputy commissioner, and continuing.
24. The medical treatment received by plaintiff from Drs. de Perczel, Grubb, Pact, Sendroff, Buckey and Schmuth was reasonably required to effect a cure, provide relief and/or tended to lessen plaintiff's period of disability and should be authorized.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On August 25, 1995, plaintiff sustained a compensable injury to her back in the course and scope of her employment with the defendant-employer as a direct result of a specific traumatic incident of the work assigned for which she is entitled to benefits under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's surgery on June 10, 1996 was causally related to and flowed directly from her August 25, 1995 compensable back injury.
3. Plaintiff's depression is causally related to her August 25, 1995 compensable injury.
4. There is insufficient evidence from which to establish plaintiff's wage-earning capacity from October 2, 1995 through June 10, 1996.
5. Plaintiff was temporarily totally disabled on August 28-29, 1995, and from June 10, 1996 (the date of surgery) through the date of hearing and continuing. She is entitled to temporary total disability benefits at the compensation rate of $163.48 per week for August 28-29, 1995, and from June 10, 1996 to the date of the hearing before the deputy commissioner and continuing until further Order of the Commission.
6. Since plaintiff continued to search for medical treatment to relieve her of pain and eventually underwent surgery, her actions were reasonable. Therefore, the medical treatment plaintiff sought and received is hereby authorized by the Commission. N.C. Gen. Stat. §§ 97-25; 97-2(19).
7. Plaintiff is entitled to have defendant provide all medical compensation reasonably necessary as a result of her August 25, 1995 back injury to the extent it tends to effect a cure, give relief or lessen her disability, including the surgery performed on June 10, 1996 by Dr. Grubb. N.C. Gen. Stat. §§ 97-25;97-2(19). Little v. Penn Ventilator Company, 317 N.C. 206,345 S.E.2d 204 (1986); Hyler v. GTE Prods. Co., 333 N.C. 258,425 S.E.2d 698 (1993).
8. The medical treatment received by plaintiff from Drs. de Perczel, Grubb, Pact, Sendroff, Buckey and Schmuth was reasonably required to effect a cure, provide relief and/or tended to lessen plaintiff's period of disability and should be authorized.
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay temporary total disability benefits to plaintiff at the compensation rate of $163.48 from August 28-29, 1995 and from June 10, 1996, to the date of hearing before the deputy commissioner and continuing until further order of the Commission. That compensation which has accrued shall be paid in a lump sum subject to the attorney's fees hereinafter approved.
2. The medical treatment received by plaintiff from Drs. de Perczel, Grubb, Pact, Sendroff, Buckey and Schmuth was reasonably required to effect a cure, provide relief and/or tended to lessen plaintiff's period of disability and is hereby authorized.
3. The defendants shall pay all medical expenses incurred or to be incurred in the future by plaintiff from said injury when bills for the same have been approved according to procedures adopted by the Industrial Commission, including the medical expenses incurred through Drs. de Perczel, Grubb, Pact, Sendroff, Buckey and Schmuth.
4. An attorney's fee in the amount of twenty-five (25) percent of the Award herein is hereby approved for plaintiff's counsel. Twenty-five percent of the Award, which has accrued, shall be paid directly to plaintiff's counsel. In addition, every fourth check due plaintiff in the future is hereby approved and shall be sent directly to plaintiff's counsel.
5. Defendants shall bear the costs of this proceeding, including expert witness fees of $235.00 to Dr. H. Grey Winfield, $235.00 to Dr. John L. de Perczel, $105.00 to Dr. David Sendroff, $155.00 to Dr. Robert Hart, $195.00 to Dr. Virginia Pact and a fee of $211.10 to Russell Court Reporting Service.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ LAURA K. MAVRETIC COMMISSIONER