The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Special Deputy Commissioner Alston and the briefs before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and to amend the Opinion and Award with regard to award of an additional period of disability.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An Employee-Employer relationship existed between the Plaintiff and the Defendant-Employer.
3. The Defendant-Employer is a qualified self-insured business entity with Key Risk Management Services as the workers' compensation plan administrator.
4. The plaintiff sustained an injury by accident arising out of and in the course of his employment with the Defendant-Employer on July 7, 1993.
5. The Plaintiff's average weekly wage is $380.00 per week.
6. Various medical records and other documents have been made a part of the record by stipulation of the parties.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. The Plaintiff had been employed with the Defendant-Employer as a carpenter for ten (10) months prior to the date of his injury.
2. The Defendant-Employer is engaged in the construction business and builds everything from residential dwellings to commercial buildings.
3. The Plaintiff's duties involved climbing ladders and scaffolds, lifting up to one hundred pounds, and the occasional use of a jackhammer.
4. On July 7, 1993, the Plaintiff sustained an injury to his left knee. The injury occurred while the Plaintiff was standing on a scaffold and one of his co-workers let go of a roof truss. The Plaintiff sought to avoid being struck by the truss and in the process twisted his knee.
5. Following the accident, the Plaintiff was treated by Dr. David James, a family physician, beginning on or about July 8, 1993. Due to continuing problems with his knee and no signs of improvement, the Plaintiff was referred to and began treating with Dr. Michael Nicks.
6. Pursuant to an MRI, Dr. Nicks' diagnosed the Plaintiff with a tear of the medial meniscus extending inferiority to the joint surface and then a small popliteal cyst.
7. As a result of Dr. Nicks' diagnosis, he performed a partial medial meniscectomy by arthroscopic surgery on the Plaintiff on October 25, 1993.
8. Initially, the Plaintiff progressed reasonably well toward recovery, but on November 1, 1993, Plaintiff complained to Dr. Nicks of problems with his knee.
9. Following November 1, 1993 the Plaintiff's complaints of pain increased and as of the Plaintiff's December 20, 1993 visit with Dr. Nicks, the Plaintiff was complaining of dizziness, swelling, multiple joint pain and soft tissue soreness, though Dr. Nicks could find no objective abnormality of Plaintiff's knee. Plaintiff had returned to modified work with Defendant-employer on December 6, 1993, even though Dr. Nicks had returned him to full duty work.
10. As a result of the Plaintiff's complaints of intense pain to multiple areas of his body, the Plaintiff was referred to Dr. Dennis Payne, a rheumatologist. The Plaintiff was first seen by Dr. Payne on January 12, 1994. After a period of treatment, Dr. Payne determined that the Plaintiff had reactive fibromyalgia. Dr. Payne's diagnosis was based on the Plaintiff's development of criteria points for fibromyalgia following a traumatic injury. The traumatic injury was the July 7, 1993 twist injury to the Plaintiff's knee.
11. Dr. DuPuy, who first saw Plaintiff on January 20, 1994 for an evaluation of Plaintiff's knee, found Plaintiff demonstrating symptom magnification in that his complaints were unreliable and inconsistent with respect to the testing performed.
12. The Plaintiff, who had been returned to work at full duty by Dr. Nicks as of December 6, 1993, was subsequently placed on light duty by Dr. Payne and Dr. DuPuy. Then Dr. DuPuy released Plaintiff to full-duty without restrictions on April 14, 1994. Even Dr. Payne found plaintiff capable of performing modified work. Medication which Plaintiff was taking did not prevent him from working. The Plaintiff was not taken out of work subsequent to April 22, 1994 by any physician. Plaintiff, however, was again told by Dr. DuPuy in May 1994 to return to full-time unrestricted work. Dr. DuPuy found Plaintiff's complaints of being unable to work incompatible with Plaintiff's report that he hiked a mountain and with the objective findings during the examination. Plaintiff has only worked one day since April 22, 1994.
13. Even though Dr. DuPuy released Plaintiff to return to full-time unrestricted work and defendant-Employer had suitable light duty work which was appropriate for Plaintiff's condition including his arm complaints, as well as full duty work, available for the Plaintiff subsequent to April 22, 1994 about which Plaintiff knew, Plaintiff simply failed to return to work after this date except for a part day of work in May, 1994. By Plaintiff's own testimony, his knee did not prevent him from returning to work in July 1994. Nonetheless, he refused to return even to modified work during this time.
14. For a second opinion on the disability rating, the Plaintiff saw Dr. R. Mark Rodger. Dr. Rodger first examined the Plaintiff on April 19, 1995, more than one (1) year following his release to return to unrestricted work.
15. Pursuant to an MRI ordered by Dr. Rodger, the Plaintiff was diagnosed with a horizontal tear at the posterior horn of the medial meniscus with a small collection of fluid posteriorly which was most likely a Baker's cyst.
16. On August 3, 1995, Dr. Rodger performed arthroscopy and a partial meniscectomy of the Plaintiff's left knee with immediate improvement of his symptoms.
17. The surgery performed by Dr. Rodger on August 3, 1995 was directly related to the Plaintiff's July 7, 1993 injury. Dr. Rodger placed the Plaintiff on work restrictions that included no squatting, climbing or carrying objects up difficult or rough terrain in August of 1995. As of the time of Dr. Rodger's deposition on August 22, 1995, the Plaintiff was only capable of light duty type work.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Plaintiff sustained a compensable injury by accident arising in the course of his employment with the Defendant-Employer on July 7, 1993; therefore, the Plaintiff is entitled to benefits under the Workers' Compensation Act. N.C.G.S. § 97-2(6).
2. The Plaintiff's injury of July 7, 1993 either caused or aggravated the Plaintiff's left knee meniscus tear and fibromyalgia. In workers' compensation actions, the rule of causation is that where the right to recover is based on injury by accident, the employment need not be the sole causative force to render an injury compensable. Hansel v. Sherman Textiles,304 N.C. 44, 283 S.E.2d 101 (1981).
3. The Plaintiff is entitled to medical compensation regarding the surgery and medical treatment provided by Dr. Mark Rodger, as well as treatment for his fibromyalgia. N.C.G.S. § 97-25; Lucas v. Thomas Built Buses, Inc., 88 N.C. App. 587,364 S.E.2d 147 (1988); Little v. Penn Ventilator Co., 317 N.C. 206,345 S.E.2d 204 (1986).
4. The Plaintiff is not entitled to temporary total disability benefits or benefits for permanent total disability following April 22, 1994, since suitable work within Plaintiff's restrictions was available after this date which plaintiff unjustifiably refused to undertake. However, since following the surgery on August 3, 1995 by Dr. Rodger Plaintiff was capable of only light work for an undetermined period of time and there is no evidence showing suitable light work was made available to him, Plaintiff is entitled to temporary total disability benefits until Plaintiff is released to full unrestricted work, provided suitable modified work or until further order of the Commission. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-32.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The Plaintiff shall receive temporary total disability benefits for the period from July 7, 1993 until April 22, 1994. The Defendant shall be entitled to a credit for all temporary total disability benefits paid during said period. The Defendant shall also be entitled to a credit for all days actually worked by the Plaintiff. Further, Plaintiff is entitled to temporary total disability benefits for the period following the second surgery on August 3, 1995 when he was capable of only light work until plaintiff is released to full unrestricted work, provided suitable modified work, or until further order of the Commission.
2. Any benefits owing to the Plaintiff which have now accrued shall be paid to the Plaintiff in a lump sum subject to the Plaintiff's attorney fee as hereinafter provided.
3. Plaintiff's attorney is entitled to twenty-five percent (25%) of any benefits presently owing to the Plaintiff; said attorney's fee shall be paid directly to Plaintiff's attorney in a lump sum from the accrued amounts and thereafter Plaintiff's counsel shall receive every fourth check.
4. The Defendant shall pay the medical costs associated with the surgery and treatment of the Plaintiff by Dr. Mark Rodger, as well as treatment for Plaintiff's related fibromyalgia.
5. The Defendant shall pay the costs of this matter.
This the _____ day of June 1998.
 S/ _________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________ KIM CRAMER DEPUTY COMMISSIONER
DCS:bjp/jlr