EVIDENTIARY RULING
On appeal, plaintiff moved that the deposition testimony of Dr. James Maultsby be excluded for reason of defendant's exparte communications with him prior to his testimony. The first and only time that plaintiff made any objection to Dr. Maultsby's deposition was on March 18, 1997 when the I.C. Form 44 and plaintiff's brief for the Full Commission was filed. Plaintiff's objection was not timely made; therefore, the motion for exclusion of Dr. Maultsby's testimony is DENIED.
In the discretion of the Full Commission, plaintiff's motion for Reconsideration of the Interlocutory Opinion and Award is DENIED. The prior Interlocutory Opinion and Award entered by the Full Commission is superseded by the following Opinion and Award for the Full Commission.
 * * * * * * * * * * *
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission AFFIRMS IN PART and REVERSES IN PART the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. The date of the plaintiff's admitted accident was August 9, 1995.
2. The plaintiff's average weekly wage on August 9, 1995 was $413.00.
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff is a 50-year-old man with a history of work primarily in construction and truck driving. He was hired by defendant-employer on June 26, 1995 to drive and load a logging truck. On August 9, 1995, while in the course and scope of his job duties with defendant, plaintiff fell on some logs after having climbed the logs (arranged like steps) to get a ticket for his load of logs from the loader operator. The fall resulted in an injury to plaintiff's left knee.
2. Prior to August 9, 1995, plaintiff received an injury to his left knee from an automobile accident on July 9, 1986 while in the course and scope of his employment with Asplundh. In this accident, plaintiff's knee struck a knob in the cab of his truck resulting in a left knee arthroscopy performed by Dr. Gerald Vanden Bosch on November 10, 1986, which revealed chondromalacia and evidence of rheumatoid arthritis. As a result of this injury, plaintiff was disabled from work for over a year and sustained a 40% permanent partial impairment to his left knee.
3. As a result of plaintiff's July 9, 1986 work-related automobile accident, plaintiff received temporary total disability benefits in the amount of $34,966.04 for the period from October 20, 1986 through September 12, 1987. Plaintiff further received compensation for the 40% permanent partial impairment to his left knee pursuant to a Compromise Settlement Agreement in the amount of $25,000, such agreement being approved by this Commission on October 22, 1987.
4. In June of 1989, while employed by S.T. Wooten Construction Company, plaintiff re-injured his left knee in another work-related automobile accident. He was again treated by Dr. Vanden Bosch who performed a second arthroscopic surgery to plaintiff's left knee wherein it was observed that plaintiff's left knee had worsened due to the second injury and a progression of the rheumatoid disease. As of the date of plaintiff's second surgery, the condition of his left knee had progressed to a Grade III or Grade IV chondromalacia. Dr. Vanden Bosch revised his disability rating of plaintiff's knee from 40% to 50% in July, 1989. The plaintiff filed a workers' compensation claim as a result of this accident against his employer which resulted in a settlement agreement.
5. While in the course and scope of his driving duties with Al's Trucking, Inc., plaintiff was again involved in an automobile accident on Thursday, September 24, 1992. In this accident, plaintiff re-injured his left knee when it hit the door of his truck. X-rays of plaintiff's knee taken by Dr. Vanden Bosch in October of 1992 showed severe degenerative changes which gave rise to problems precipitated by plaintiff's 1992 accident which warranted a total left knee replacement. Dr. Vanden Bosch reiterated his disability rating of plaintiff's left knee at 50% following this accident. The injury on September 24, 1992 resulted in plaintiff being out of work for two to three months.
6. As of October 14, 1992, plaintiff was in need of a total left knee replacement and such surgery was scheduled for October 29, 1992. However, this surgery did not take place at that time.
7. On August 8, 1994, plaintiff was seen by Dr. Michael Glover, an orthopaedic surgeon, for problems with his right knee which were found to be partially caused by inflammatory arthritis and rheumatoid arthritis with loss of joint surface diffusely throughout the knee. A right knee arthroscopy was subsequently performed on September 13, 1994, for the flare up of plaintiff's rheumatoid arthritis.
8. From August 29, 1990 through August 9, 1995, plaintiff sought treatment from Dr. James Taylor for periodic flare-ups of the rheumatoid arthritis in both of his knees as well as various other joints. His treatment consisted of arthritis medicine, steroids, gold shots and the narcotic pain medication Percocet, for which plaintiff was prescribed a significant amount in the six-month period prior to August 9, 1995 — 60 Percocet pain pills on June 30, 1995, and 60 more on July 17, 1995. Plaintiff experienced another flare up of his arthritis on July 28, 1995, at which time his left knee had significantly deteriorated and was swollen from chronic osteoarthritic changes. As of July 28, 1995, plaintiff suffered from severe, debilitating arthritis in his left knee.
9. Following plaintiff's fall on August 9, 1995, he continued to carry out his job duties for the remainder of that day, chaining down logs and delivering them to their destination. The following morning he presented to Urgent Care of Smithfield where x-rays of his left knee revealed advanced degenerative arthritis with loss of the clear space between the joints, resulting in bone rubbing against bone. Plaintiff was immediately referred to Dr. James Maultsby for a follow up examination.
10. Dr. Maultsby saw the plaintiff initially on August 10, 1995 and again on August 14 and August 21, 1995. His examinations revealed some joint swelling but no fluid on plaintiff's left knee, negating a sprain or acute injury. Plaintiff was released by Dr. Maultsby to return to work without restrictions on August 14, 1995.
11. Plaintiff returned to work with defendant-employer on August 14, 1995, but was undisputedly terminated by the defendant-employer for reasons which are not disclosed in the record. There is no evidence in the record to suggest that plaintiff has sought work since August 14, 1995 or been unable to work anywhere since August 14, 1995, because of "the pain" in his left knee. The record does suggest that the plaintiff was able to work immediately following the August 9, 1995 injury, but did not work initially because there was a problem with his truck.
12. On September 22, 1995, plaintiff presented to Dr. Maultsby for the last time, with complaints of pain in both of his knees.
13. On October 16, 1995, plaintiff was treated by Dr. Michael Glover at which time the examination revealed that both of plaintiff's knees were swollen but the left knee was swollen more noticeably. The x-rays showed no radiographic evidence of trauma, but revealed a long-term progression of plaintiff's arthritic condition. Plaintiff was put on work restrictions and his surgical options were explained, which included a total knee replacement. Dr. Glover opined that, "I believe the accident did accelerate or advance the inevitable knee replacement on the left side." No weight is given to the opinion by Dr. Glover's because plaintiff had been in need of a total left knee replacement since October 14, 1992. Therefore, the August 9, 1995 fall did not accelerate his need for total left knee replacement.
14. Dr. Taylor also gave the opinion that plaintiff's August 9, 1995 injury aggravated his pre-existing left knee arthritic condition and caused plaintiff to become incapable of working. However, Dr. Maultsby was of the opinion that plaintiff's injury of August 9, 1995 did not significantly contribute to plaintiff's left knee problems and that the injury of August 9, 1995 did not significantly contribute to plaintiff's need for total left knee replacement. Greater weight is accorded to the opinion of Dr. Maultsby on these issues.
15. On December 6, 1995, plaintiff underwent total left knee joint replacement surgery performed by Dr. Glover at Wilson Memorial Hospital. As of March 14, 1996, plaintiff was released to do sedentary work. Dr. Glover also gave the opinion that plaintiff should have been at maximum medical improvement by June 1996 — approximately six months from the time of the surgery.
16. Prior to August 9, 1995, plaintiff suffered constant pain in both of his knees due to severe, debilitating arthritis and the prior three injuries he had sustained to his left knee and was actively seeking treatment for this condition with Dr. James Taylor. His last pre-injury visit occurred on July 28, 1995. In the months preceding the August 9, 1995 injury, plaintiff was taking pain medication, including Percocet and dosepaks of Prednisone for relief of his progressive and degenerative condition. The rheumatoid arthritis and the osteoarthritis from which plaintiff suffered prior to August 9, 1995, are progressive, degenerative and inflammatory processes which caused progressive degeneration and deterioration of plaintiff's knees prior to August 9, 1995.
17. The greater weight of the evidence shows that plaintiff sustained an injury by accident on August 9, 1995 arising out of and in the course of his employment with defendant-employer and that plaintiff's new injury to his left knee on August 9, 1995 aggravated his pre-existing conditions but did not cause plaintiff's need for total knee replacement surgery. Plaintiff's need for total knee replacement was caused by prior work-related injuries and these claims have been settled by Compromise Settlement Agreement. Plaintiff needed a total knee replacement in October, 1992 and that need continued up to and after August 9, 1995.
18. In an Interlocutory Opinion and Award, the undersigned found that plaintiff's injury on August 9, 1995 may have caused an increase in his impairment rating to the left knee. The undersigned also found that plaintiff would be entitled to compensation for any increase in his impairment rating beyond his pre-existing 50% permanent partial impairment for which he has previously been compensated. The record was reopened for the receipt of additional medical evidence on this issue. Thereafter, the deposition testimony of Dr. Taylor and Dr. Glover was taken and submitted as additional evidence.
19. The undersigned gives no weight to Dr. Taylor's testimony that plaintiff's left leg is 100% impaired because Dr. Taylor did not base his opinion on any rating guide. Dr. Glover's opinion that plaintiff has a 20% increase in the impairment rating to his left leg as a result of the August 9, 1995 injury is given greater weight.
20. As a result of his August 9, 1995 injury, plaintiff is entitled to temporary total disability compensation for the period from August 10, 1995 through August 14, 1995, the date he was released to return to work without restrictions and permanent partial disability compensation for 40 weeks for the twenty percent (20%) increase in impairment to his left leg.
21. After plaintiff was terminated for unknown reasons on August 14, 1995, plaintiff did not make reasonable efforts to find suitable employment.
22. As a result of his fall on August 9, 1995, plaintiff incurred medical expenses for treatment necessitated by his injury.
 * * * * * * * * * * *
Based on the foregoing findings of fact and stipulations, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 9, 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's injury on August 9, 1995, aggravated the pre-existing condition of his left knee, and resulted in temporary total disability for three days and an increase in his impairment rating. As of August 14, 1995, plaintiff was capable of working and earning pre-injury wages.
3. Plaintiff has needed a total knee replacement since October, 1992 and his August 9, 1995 injury did not contribute in any material degree to the disability which caused the need for total knee replacement.
4. Plaintiff has sustained an additional permanent partial impairment to his left knee in the amount of 20% as a result of his August 9, 1995 injury. Plaintiff is entitled to compensation for the 20% increase in impairment rating arising from his injury as well as compensation for the temporary total disability period of three days since the total disability period exceeds seven days. Defendant is not required to pay plaintiff for any disability rating for the knee above the additional 20% rating that was due to the August 9, 1995 injury. N.C. Gen. Stat. §§97-29 and 97-31(23).
5. Upon Dr. James Maultsby's release of plaintiff to return to work August 14, 1995, without restrictions, plaintiff had the burden of showing that his failure to work thereafter was due to disability arising from his injury. Plaintiff has failed to meet this burden of proof. Based upon the evidence presented, plaintiff was dismissed by his employer for unspecified reasons when he returned to work on August 14, 1995. After his termination, plaintiff failed to make reasonable efforts to find employment suitable to his capacity.
6. Plaintiff is entitled to have defendant provide all medical compensation reasonably necessary as a result of his injury by accident to the extent it tends to effect a cure, give relief or lessen his disability. The total knee replacement surgery performed by Dr. Glover was not reasonably related to plaintiff's August 9, 1995 accident and defendant is not responsible for payment of same. N.C. Gen. Stat. §§ 97-25;97-2(19). Little v. Penn Ventilator Company,317 N.C. 206, 345 S.E.2d 204 (1986); Hyler v. GTE Prods. Co.,333 N.C. 258, 425 S.E.2d 698 (1993).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay to plaintiff temporary total disability for three days and permanent partial disability compensation for 40 weeks for the additional 20% permanent partial disability rating to his left knee. N.C. Gen. Stat. §§ 97-29 and 97-31.
3. Plaintiff's claim for medical compensation for total knee replacement is DENIED.
4. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission, with the exception of the cost of plaintiff's left knee replacement surgery.
5. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph two of this Award is approved for plaintiff's counsel and shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
6. Defendant shall bear the costs of this proceeding, including the following expert witness fees: $235.00 to Dr. Gerald C. Vanden Bosch, $235.00 to Dr. Michael Griffin Glover, $235.00 to Dr. James Maultsby, and $155.00 to Dr. James V. Taylor III.
 * * * * * * * * * * *
This the _______ day of March 2000.
 S/
BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/
LAURA K. MAVRETIC COMMISSIONER
Retired before decision could be rendered
J. HOWARD BUNN, Jr., CHAIRMAN