***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen and the briefs and oral arguments on appeal. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms and adopts the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission (hereinafter "Industrial Commission"), and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act (hereinafter "Act").
4. At all relevant times, an employment relationship existed between the parties.
5. Cambridge Integrated Services was formerly the administrative agency, but the North Carolina Insurance Guaranty Fund is now the administrative agency.
6. Cordaro's average weekly wage is $605.50, yielding a weekly compensation rate of $403.65.
7. Cordaro's alleged dates of injury are June 7, 1996 and December 6, 1996.
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On the date of the hearing, Cordaro was fifty-seven years old.
2. Cordaro completed a sixth grade education and received a GED. Cordaro has no special skills or licenses other than those discussed hereinafter. Jack Gray Transport (defendants collectively hereinafter "JGT") hired Cordaro in October 1993. With JGT, Cordaro worked as a garbage truck driver and was so employed on the dates of his injuries by accident.
3. Prior to his employment with JGT, Cordaro had significant preexisting conditions in several body parts, but no medical problems that kept him from performing the full duties of competitive employment. Cordaro has a good employment history of working throughout his life.
4. On or about June 7, 1996, Cordaro sustained an injury when he fell, dislocating his shoulder. This injury improved with conservative treatment.
5. On or about December 6, 1996, Cordaro sustained an injury when he slipped on mud and fell. As a result, Cordaro suffered multiple injuries to his back, hip, ankle and knees. His hip injuries required surgical correction.
6. In 1997 while participating in a vocational rehabilitation program in Winston-Salem, Cordaro sustained an injury to his right ankle during a treadmill exercise. This injury required surgery to remove bone chips from Cordaro's right ankle.
7. JGT accepted Cordaro's accidents as compensable and paid benefits, including weekly disability benefits, through the date of the hearing.
8. Dr. Vincent E. Paul (hereinafter "Dr. Paul") began treating Cordaro on December 27, 1996 and has examined and treated Cordaro on over twenty occasions between December 1996 and the date of the hearing. Dr. Paul diagnosed Cordaro with bilateral knee degenerative joint disease with synovitis, a labral hip tear, S1 degenerative disc disease in the low back, an osteoarthritic ankle, and a fused foot.
9. Dr. Paul has consistently imposed significant work restrictions on Cordaro. Most recently, Dr. Paul restricted Cordaro to light-duty work only with no truck driving, welding, loading, stooping, or bending. Cordaro is confined to work while sitting that requires Cordaro to elevate his leg and change positions due to his sciatica, hip and ankle problems.
10. Cordaro attempted to return to employment after he was initially released to return to work on September 24, 1997 and began work as a sanitation truck driver in Kernersville. The job increased Cordaro's pain and, after two weeks, Dr. Paul removed Cordaro from work due to the pain Cordaro experienced while driving the truck and climbing in and out of the cab.
11. Cordaro has not returned to any employment since October 1997.
12. Cordaro attempted self-directed efforts to retain himself for employment. He applied for and received a Pell Grant for continuing education, which he used for HVAC and welding training. Dr. Paul believes Cordaro is physically unable to perform HVAC or welding work, but could conceivably serve as a welding instructor. No teaching positions materialized.
13. Cordaro attempted retraining in computer technology by entering formal classes in their use. JGT refused to authorize continuing education in this endeavor despite the fact that Sharol Siler, MRC, CRC, (hereinafter "Siler"), the vocational rehabilitation consultant assigned to Cordaro by JGT, found Cordaro willing and cooperative in this effort.
14. Dr. Paul finds Cordaro has reached maximum medical improvement, and that his conditions are more likely than not permanent.
15. Dr. Paul's testimony is uncontradicted that Cordaro will retain significant physical limitations under optimum circumstances. Dr. Paul, realizing these limitations, testified "there would be some efficacy to [performing] a functional capacity evaluation, and also to perhaps doing work trial or work reconditioning to get [Cordaro] a certain job." He also testified that it would "be very appropriate" for Cordaro to participate in vocational retraining or vocational rehabilitation to determine what, if any, capabilities Cordaro has to return to work.
16. Siler testified that Cordaro was unable to return to his pre-injury employment. Her testimony also confirms that Cordaro's restriction to light-duty work means that he has minimal transferable skills from his prior experience in medium to heavy work.
17. Goodwill Industries assessed Cordaro's ability to return to sustained gainful employment in the competitive market and identified some possible employments. However, Goodwill Industries did not have access to a comprehensive physical residual functional capacity examination.
18. Cordaro testified that he is willing to undertake retraining to determine if he can achieve suitable employment in the competitive workforce consistent with his obvious physical restrictions.
19. Both Dr. Paul's and Siler's testimony as to Cordaro's residual functional capacity were made without benefit of a thorough functional capacity examination. Additionally, Siler did not have the benefit of Dr. Paul's extensive testimony in preparing the reports appended to her testimony or in presenting her testimony.
20. JGT has produced no evidence, and does not contend, that Cordaro is currently capable of suitable employment. The greater weight of the evidence clearly establishes that as a result of the compensable injuries by accident suffered by Cordaro on June 7, 1996 and December 6, 1996, combined with his age, education, work experience, current work restrictions and injuries to his shoulder, back, hip, right knee, ankle and foot, Cordaro has been unable to return to and sustain any employment.
21. Siler's final rehabilitation report of March 2004 indicates no open jobs in the Dictionary of Occupational Titles (DOT) within Cordaro's work restrictions. Siler recommended no vocational placement for Cordaro and did not identify any job in any exertional level currently open and available to Cordaro.
22. The medical and vocational evidence supports a finding that Cordaro is incapable of earning his pre-injury wages with JGT or with any other employer at this time.
23. Dr. Paul's credible testimony is not contradicted that Cordaro's shoulder injury, lumbar injuries, including sciatica, hip injury, right knee injury and right ankle injury were causally related to Cordaro's compensable injury by accident. Cordaro's other significant preexisting conditions, particularly his left knee, were not causally related in Dr. Paul's uncontradicted opinion.
24. Dr. Paul is serving as Cordaro's primary treating physician and the whole record establishes that treatment for the compensable conditions has been reasonable and necessary to effect a cure, give relief from pain or lessen the period of Cordaro's disability.
25. The uncontradicted testimony establishes that Cordaro may require future medical care in order to effect a cure or give relief and lessen the period of disability for Cordaro's back, including sciatica, hip and right knee. Dr. Paul testified that any future problems with Cordaro's right ankle would be related to preexisting conditions and not the bone spur arising from the compensable injury. To this end, an Industrial Commission Form 18M was appropriately filed.
26. Cordaro's contention that JGT denied medical treatment, more particularly treatment for Cordaro's right ankle, and permanent total disability benefits without reasonable grounds is not well taken. A review of the entire record in this case establishes that the matter of Cordaro's permanent and total disability remains at issue. Evaluation of liability for Cordaro's medical treatment is complex due to his extensive preexisting conditions. In regard to his right ankle, Dr. Paul's testimony, while rendering the condition causally related, was not without his own circumspection.
27. Cordaro's counsel of record has provided valuable legal services including but not limited to the preparation and trial of this action. Counsel has petitioned for a reasonable attorney fee of twenty-five percent of Cordaro's ongoing weekly disability compensation and the request is reasonable under the circumstances of this case.
 ***********
Based on upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of Cordaro's compensable injuries by accident, he has been unable to earn his prior wages in the same or other employment and has been totally disabled from all employment since December 6, 1996. N.C. Gen. Stat. § 97-29 (2001); Russell v. Lowes Prod. Dist.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). See also Saums v.Raleigh Community Hospital, 346 N.C. 760, 487 S.E.2d 746 (1997); Kisiahv. W.R. Kisiah Plumbing, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439
(1996), disc. review denied, 345 N.C. 343, 483 S.E.2d 169 (1997).
2. As stipulated by the parties, Cordaro is entitled to weekly disability compensation at the rate of $403.65 per week from December 6, 1996 and continuing until further orders of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Cordaro is entitled to payment for all medical treatment for all injuries arising out of his compensable injures as is reasonably necessary to effect a cure, give relief or lessen his disability. The Industrial Commission may order such rehabilitative procedures as reasonably required. N.C. Gen. Stat. § 97-25; Little v. Penn VentilatorCo., 317 N.C. 206, 210, 345 S.E.2d 204, 207 (1986).
4. The Industrial Commission may, in its discretion, designate Cordaro's authorized treating physician. Dr. Paul has provided Cordaro extensive medical treatment and is designated as the authorized treating physician for the direction and management of Cordaro's medical treatment. N.C. Gen. Stat. § 97-25.
5. The Form 18M completed by Dr. Paul and filed by Cordaro is hereby approved. JGT shall provide medical treatment for Cordaro's injuries to his shoulder, back, right knee, right hip and right ankle that are related to Cordaro's compensable injuries. N.C. Gen. Stat. § 97-25.1.
6. JGT's defense of the issues in this matter was not on unreasonable grounds. N.C. Gen. Stat. § 97-88.1. Cordaro's counsel of record has provided valuable legal services and Cordaro shall pay a reasonable attorney fee of twenty-five percent of future weekly disability compensation benefits. N.C. Gen. Stat. § 97-90.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commission and enters the following:
 AWARD
1. JGT shall pay Cordaro total disability compensation in the amount of $403.65 per week beginning December 6, 1996 and continuing until further orders of the Industrial Commission. This award is subject to the attorney fees provided for hereinafter.
2. Dr. Paul is and shall continue to serve as Cordaro's authorized treating physician until further order of the Industrial Commission or mutual agreement by the parties.
3. Dr. Paul may perform all care and treatment reasonably necessary, including authorization of prescription medications, as long as such care and treatment is reasonably necessitated by the injuries or complications thereof sustained by Cordaro. Dr. Paul may also make appropriate referrals for additional medical and rehabilitative care and treatment provided the need for the services are necessitated by the injuries or complications thereof sustained by Cordaro.
4. JGT may not require pre-authorization for any treatment or services except inpatient admission to a hospital or treatment center, or inpatient or outpatient surgery. If JGT requires such pre-authorization, JGT must strictly comply with N.C. Gen. Stat. § 97-25.3.
5. JGT shall pay for all such care and treatment when the bills for such services have been filed with and approved by the Industrial Commission in accordance with law and all applicable administrative regulations or paid directly in accordance with Industrial Commission administrative regulations.
6. Counsel for Cordaro shall deliver a copy of this Opinion and Award upon the authorized treating physician. By delivery of this Opinion and Award to Dr. Paul, this health care provider is hereby notified that authorization is granted to treat or refer treatment as indicated subject to preauthorization only as provided for above.
7. However, Dr. Paul is not authorized to provide or refer for any care or treatment at JGT's expense that is not a consequence of Cordaro's compensable injuries. Treatment is authorized for any pre-existing problems or otherwise unrelated problems which are activated, accelerated or significantly contributed to by the initial injury or any of the treatment therefore, is deemed to be compensable and shall be paid by JGT as provided for above.
8. Dr. Paul is specifically directed to perform a comprehensive residual functional capacity examination to accurately determine Cordaro's ability, if any, to perform suitable employment. Dr. Paul shall review the results of the examination and advise the parties as to his opinion on the permanent restrictions Cordaro retains and his opinion on whether or not Cordaro may engage in any suitable employment.
9. If JGT continues to utilize the services of a vocational rehabilitation specialist, JGT shall provide that specialist with a copy of all pertinent medial records related to Cordaro's conditions and specifically a copy of Dr. Paul's testimony in this case. In addition, any vocational rehabilitation specialist is to be provided a complete copy of the residual functional capacity examination ordered.
10. JGT shall suspend any further efforts at vocational rehabilitation pending Cordaro's evaluation and Dr. Paul's report. If Dr. Paul's report does not resolve the issue of Cordaro's ability to perform suitable employment, either party may request a hearing on the issues raised.
11. Dr. Paul shall determine the source and providers of medical treatment. However, to the extent JGT has established contractual relationships with providers at favorable rates; Dr. Paul shall consider utilizing those sources as long as the timeliness and quality of treatment is not jeopardized.
12. The above provisions regarding Dr. Paul's authority shall extend to any subsequent authorized treating physician whether pursuant to the agreement of the parties or order of the Commission.
13. Cordaro shall pay counsel of record a reasonable attorney fee of twenty-five percent of all liquidated, if any, and unliquidated weekly compensation benefits. JGT shall deduct the amount awarded from any liquidated benefits, if any, and pay the same to Cordaro's counsel in one lump sum. As to unliquidated weekly disability benefits, JGT shall deduct every fourth weekly benefit payment from Cordaro and pay the same directly to Cordaro's counsel.
14. JGT shall pay such costs as may be provided by law.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER