***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses in part the Opinion and Award of Deputy Commissioner Gheen and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. On February 7, 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act
2. On that date, an employment relationship existed between plaintiff, Sharon Potter and defendant-employer, Bob Barker Company, Inc.
3. On February 7, 1992, plaintiff sustained a compensable back injury that ultimately required a three-level fusion surgery.
4. Plaintiff's authorized treating physician has prescribed diazepam. Defendant-carrier refuses to authorize payment for Potter's diazepam prescriptions on the ground that it is not for treatment of her compensable injury.
5. Plaintiff's authorized treating physician has prescribed use of an RS Medical sequential muscle stimulator (hereinafter "SMS unit"). Plaintiff has requested that defendants authorize the SMS unit. Defendants denied authorization of payment for Potter's SMS unit.
6. The following documents were admitted into evidence by stipulation of the parties:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement.
 (b) Stipulated Exhibit 2: Compendium of medical records.
 (c) Stipulated Exhibit 3: Correspondence related to the SMS unit.
 (d) Stipulated Exhibit 4: Various correspondence.
 *********** EVIDENTIARY RULING *Page 3 
Defendants have made a motion to include Forms 25P, which were submitted to defendants by plaintiff prior to September, 2004. Defendants' motion to admit additional evidence is hereby ALLOWED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT a. Treatment of Insomnia and Anxiety
1. At the time of the hearing, plaintiff was forty-six years old. She sustained a compensable low back injury on February 7, 1992 which resulted in three surgeries, the last of which consisted of a three-level lumbar fusion performed by Dr. Paul Suh (hereinafter "Dr. Suh") on May 18, 2001.
2. Plaintiff suffers chronic pain of significant magnitude, exacerbated by underlying anxiety.
3. Plaintiff's medical history includes institutionalization for cocaine abuse in the late 1980s and rehabilitation for alcoholism in 1994 and again in 1995. Following her 1992 surgery, plaintiff abused her prescriptions for Valium and Percocet. Her treating physician advised plaintiff that abuse of her medications was problematical. Despite the treating physician's stated intention not to prescribe further narcotics, narcotic medications were continued. A psychological evaluation performed on August 25, 1999 concluded that plaintiff's history of drug abuse should be considered in planning her treatment program because she may be prone to addiction. *Page 4 
4. Dr. Suh referred plaintiff to Dr. Chock Tsering (hereinafter "Dr. Tsering") for treatment of chronic pain following her third surgery. Dr. Suh prescribed Oxycontin, Neurontin and Celexa and treated plaintiff with injections of Botox.
5. Plaintiff experiences anxiety or "stress" as well as insomnia. Beginning on October 15, 2002 and continuing, Dr. Tsering prescribed Valium as treatment for both plaintiff's insomnia and "stress." In particular, Dr. Tsering's note indicated that plaintiff had been under severe stress after speaking with someone from social services and having an argument with her live-in boyfriend. In a letter to Dr. Suh dated March 5, 2004, over a year and a half after the initial prescription, Dr. Tsering causally related plaintiff's insomnia to her chronic low back pain, advised he was prescribing Valium as treatment for insomnia. However, the medical notes indicate that plaintiff complained of insomnia after she had been taken off of valium.
6. On December 23, 2004, plaintiff began receiving treatment from Dr. Luo-Tseng, who assumed the care of Dr. Tsering's patients after the latter left practice with the North Carolina Spine Center. Key Risk authorized Dr. Luo-Tseng to treat plaintiff for chronic pain and related symptoms.
7. Dr. Luo-Tseng generally continued plaintiff's prior prescriptions including Valium as treatment for insomnia and anxiety. Dr. Luo-Tseng did establish a treatment objective of reducing plaintiff's use of narcotic or addictive medications.
8. Dr. Luo-Tseng testified that she "suspected" plaintiff's problems were linked to her back pain, and also testified that it "is reasonable to assume" that plaintiff's back pain had exacerbated her symptoms.
9. Dr. Luo-Tseng's testimony denotes that she used the term "suspect" to equate her belief or opinion. Upon further examination, it appears that Dr. Luo-Tseng was satisfied to a *Page 5 
requisite degree of certainty.
10. Following the hearing in this action, Dr. Luo-Tseng prescribed Ambien as an alternative medication for plaintiff's insomnia. Defendants have denied authorization for this medication.
11. Key Risk employed Dr. Joseph Guarino (hereinafter "Dr. Guarino") to evaluate the use of Valium in plaintiff's case. Dr. Guarino was employed three days prior to the hearing in this action and did not examine plaintiff. Dr. Guarino testified that Valium was once commonly used to treat insomnia, but is no longer "commonly" used for that purpose. He also testified that Valium is "restricted to a limited period of time, perhaps on the order of a month or two."
12. Dr. Guarino did not testify that Valium is not reasonably necessary to treat the symptoms caused by plaintiff's low back condition or that Valium is contraindicated for plaintiff's condition.
13. Dr. Guarino testified that Ambien is currently recognized as an appropriate drug to treat insomnia.
14. The greater weight of the evidence establishes that plaintiff received relief from her anxiety and insomnia as a result of taking Valium. As borne out in the testimony, the opinions of Dr. Tsering and Dr. Luo-Tseng establish that plaintiff's insomnia and anxiety were caused or significantly aggravated by chronic low back pain and that the Valium prescribed was reasonably necessary to provide relief of plaintiff's symptoms. Plaintiff will benefit from continued use of Valium or Ambien as treatment for her insomnia.
 b. Medical Necessity of a Sequential Muscle Stimulator
15. Dr. Luo-Tseng prescribed the SMS unit as treatment for plaintiff's chronic pain *Page 6 
and in conjunction with the objective to reduce plaintiff's use of narcotic and addictive medications. Dr. Luo-Tseng prescribes an SMS unit as a prophylactic measure in all her patients with chronic low back pain because it has benign side effects compared to narcotic pain medication. Additionally, the device (a) gives the benefits of exercise without exacerbating the injury or overly stressing the postoperative area and (b) it relieves acute pain and manages chronic pain.
16. Plaintiff received the SMS unit on January 5, 2005 and RS Medical requested approval for payment of the unit from Key Risk. On February 4, 2005, Ms. Mary McGee, a Nurse Consultant with Key Risk's Utilization Review Department, sent a letter to RS Medical responding to the former's request for payment of the SMS unit. Key Risk requested that RS Medical provide a history of the actual use of the SMS unit and data that the unit is capable of producing. RS Medical did not provide this information and Key Risk suspended payment for the unit pending receipt of clinically objective medical evidence supporting its use and a usage report for the month of January 2005.
17. Dr. Luo-Tseng's medical notes include a letter dated February 2, 2005 addressing the medical necessity of the prescribed SMS unit, which she explained is a form letter she always uses to justify the use of the device. Dr. Lou-Tseng's letter was received by Key Risk.
18. On March 1, 2005, Key Risk sent a second letter to RS Medical explaining that they had not received usage data from plaintiff's SMS unit to make a determination of medical necessity. Based on the lack of information, Key Risk continued to deny payment for the device.
19. Although Key Risk denied payment for the SMS unit pending further information, plaintiff received the device and uses it on a regular basis. The record establishes that plaintiff reported relief from pain with the use of the device and the SMS unit was minimally successful *Page 7 
in Dr. Luo-Tseng's effort to reduce plaintiff's use of narcotic medication.
20. Dr. Guarino testified that he found no medical literature documenting the efficacy of the SMS unit. Dr. Guarino also testified that the SMS unit, in plaintiff's specific circumstances, "is [not] going to make a major impact in terms of leading to this patient's function restoration or . . . remedying any particular impairment that she may have."
21. Dr. Guarino affirmatively testified that the SMS unit could reduce muscle pain.
22. Having considered all of the medical records and testimony of record, the greater weight of the evidence shows that the SMS unit is reasonable and medically necessary for plaintiff's treatment. The testimony of plaintiff's treating physician is both credible and convincing.
23. The greater weight of the evidence establishes that plaintiff will continue to benefit from use of the SMS unit.
 c. Defense of the Claim
24. Defendants originally denied plaintiff's Valium prescription because Dr. Tsering's note regarding plaintiff's initial Valium prescription indicated that plaintiff had been under severe stress after speaking with someone from social services and having an argument with her live-in boyfriend. The note did not indicate that plaintiff was complaining of insomnia. In fact, plaintiff complained of insomnia only after she had been taken off of Valium, and defendants contended that her insomnia was due to Valium withdrawal, which is a common symptom. It is also important to note that plaintiff has a history of drug abuse. Based upon these factors, defendants denied authorization of the prescription on the grounds that it was not prescribed to address symptoms regarding her compensable work injury. *Page 8 
25. Defendants denied the SMS unit prescribed to plaintiff based on lack of information, both regarding the necessity of the unit and its usage. Defendants did not receive Dr. Luo-Tseng's February 2, 2005 letter regarding necessity of the unit until the hearing in this matter had already been requested. Defendants referred to matter to Dr. Guarino, who indicated that the device was not reasonably necessary to treat plaintiff's pain.
27. Defendants have shown a sufficient factual basis upon which defendants reasonably relied in defending both aspects of plaintiff's claim. Accordingly, defendants' defense of plaintiff's claim was reasonable, and defendants have not engaged in stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In a compensable workers' compensation claim, defendants are legally obligated to pay for all medical expenses incurred for medical treatment for so long as such examinations, evaluations and treatments are reasonably necessary to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. § 97-25; Hyler v. GTE ProductsCo., 333 N.C. 258, 425 S.E.2d 698 (1993); Little v. Penn VentilatorCo., 317 N.C. 206, 345 S.E.2d 204 (1986). Relief from pain is "relief" within the meaning of the Act. Radica v. Carolina Mills,113 N.C. App. 440, 439 S.E2d 185 (1994).
2. Once an injured employee establishes that a compensable injury has been sustained, a rebuttable presumption arises that additional medical treatment is related to the original compensable injury. The prior decision in this action accords plaintiff the Renninger *Page 9 
presumption for the treatment ordered by her authorized treating physicians. Renninger v. Prestige Fabricators, Inc., 136 N.C. App. 225,523 Se.E.2d 720 (1999).
3. Defendants have failed to proffer evidence that is convincing by its greater weight to rebut the Renninger presumption that plaintiff's prescription medications for Valium and Ambien and the SMS unit are not related to the original compensable injury, are not medically necessary or would not provide "relief" within the meaning of the Act.Renninger v. Prestige Fabricators, Inc., 136 N.C. App. 225, 523 Se.E.2d 720 (1999).
4. Defendants' defense of Plaintiff's claim for payment for Valium, Ambien and the SMS unit was based upon a sufficient factual basis and does not constitute stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff for treatment of her compensable injury, including all prescriptions for Valium, Ambien and the SMS unit, for so long as such treatments are reasonably necessary to effect a cure, provide relief or lessen plaintiff's period of disability.
2. Defendants shall pay costs.
This the 18th day of April, 2006.
S/___________________ BUCK LATTIMORE CHAIRMAN *Page 10 
CONCURRING:
 S/____________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
 S/____________________ THOMAS J. BOLCH COMMISSIONER *Page 1