***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their *Page 2 
representatives, the Full Commission, upon reconsideration of the evidence, modifies the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** PLAINTIFF'S MOTION TO ADMIT ADDITIONAL MEDICAL RECORDS INTO EVIDENCE AND DEFENDANTS' MOTION TO STRIKE
Plaintiff filed a Motion, contemporaneous with her Brief to the Full Commission, seeking to admit into evidence the following: (1) medical records from Rocky Mount Family Medical Center dated March 15, 2006 through October 6, 2006, and attached to Plaintiff's Motion as Schedule "C," which are dates of treatment occurring prior to the October 25, 2006 hearing and the January 10, 2007 deposition of Mark S. Abel, M.D. (Plaintiff's primary treating physician at Rocky Mount Family Medical Center), but which were "inadvertently overlooked," and thus, not produced to Defendants; (2) medical records from Rocky Mount Family Medical Center dated December 10, 2007, and attached to Plaintiff's Motion as Schedule "A," which is after the October 25, 2006 hearing and the January 10, 2007 deposition of Mark S. Abel, M.D., and which were not produced to Defendants; and (3) a letter dated April 9, 2007, written by Mark S. Abel, M.D., recommending that the Plaintiff receive Social Security Disability benefits, and attached to Plaintiff's Motion as Schedule "B," which is after the October 25, 2006 hearing and the January 10, 2007 deposition of Mark S. Abel, M.D., and which was not produced to Defendants. In support of her Motion, Plaintiff states, among other things, that none of the medical records which she now proposes to admit into evidence are inconsistent with Dr. Abel's testimony, and that Defendants are not prejudiced by the admission of such records. Plaintiff further contends that these additional medical records "include nothing novel beyond that which is contained in his [Dr. Abel's] deposition and the medical records previously introduced." *Page 3 
Defendants filed a Motion to Strike, in response to Plaintiff's Motion, stating as grounds in support thereof, that the admission of these additional medical records would be in violation of Rule 605 and Rule 607 of the Industrial Commission Rules, and would have a prejudicial effect on Defendants, since they did not have the benefit of using them in the presentation of their case. Defendants further argue that production of these additional medical records "would be to reward a clear violation of the Industrial Commission Rules regarding timely disclosure of medical information. . . ." Defendants ask that the Full Commission strike the medical records attached to Plaintiff's Motion.
After careful consideration of the arguments of counsel, the Full Commission finds that Plaintiff's Motion should be ALLOWED in part, and DENIED in part. As such, Defendants Motion to Strike should be ALLOWED in part, and DENIED in part, as follows:
 1. The medical records from Rocky Mount Family Medical Center dated March 15, 2006 through October 6, 2006, and attached to Plaintiff's Motion as Schedule "C," which are dates of treatment occurring prior to the October 25, 2006 hearing and the January 10, 2007 deposition of Mark S. Abel, M.D., are hereby admitted into evidence, since Defendants had an opportunity to examine Dr. Abel regarding any treatment rendered, as well as any medical records generated as a result of treatment rendered, through the date of Dr. Abel's deposition;
 2. The medical records from Rocky Mount Family Medical Center dated December 10, 2007, and attached to Plaintiff's Motion as Schedule "A," which is after the October 25, 2006 hearing and the January 10, 2007 deposition of Mark S. Abel, M.D., are hereby stricken from the record, *Page 4 
since Defendants had no opportunity to examine Dr. Abel regarding any treatment rendered, as well as any medical records generated as a result of treatment rendered, following the date of Dr. Abel's deposition;
 3. The letter dated April 9, 2007, written by Mark S. Abel, M.D., recommending that the Plaintiff receive Social Security Disability benefits, and attached to Plaintiff's Motion as Schedule "B," which is after the October 25, 2006 hearing and the January 10, 2007 deposition of Mark S. Abel, M.D., is hereby stricken from the record.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties in the Pre-Trial Agreement as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to the mis-joinder or non-joinder of parties.
3. On May 26, 2005, an employee-employer relationship existed between Plaintiff and Rocky Mount Preparatory School (hereinafter referred to as "Employer-Defendant").
4. On May 26, 2005, Plaintiff's average weekly wage was $346.15, yielding a compensation rate of $230.78.
5. The parties stipulated to the following documents: a Pre-Trial Agreement; medical records of Plaintiff (specifically, medical records from Rosario Guarino, M.D.; Nelson T. Macedo, *Page 5 
M.D.; Rocky Mount Family Medical Center, from October 14, 1996 through March 15, 2006; Armstrong and Associates; NovaCare Rehabilitation; and William F. Lestini, M.D.); Industrial Commission Forms; discovery responses; and voicemail logs.
6. During the hearing, Defendants admitted into evidence a classroom desk and chair identified as Defendants' Exhibit D-1. Following the hearing, on January 18, 2007, the parties stipulated to the weight and dimensions of the desk and the chair. The desk weighs 17.6 pounds. The desktop is approximately two (2) feet by one and one-half (1 ½) feet. The height of the desk is approximately two (2) feet. The height of the chair is approximately 27 inches, and the chair has a 14-inch by 14-inch seat. The chair weighs 13.8 pounds.
 ***********
Based upon all of the competent and credible evidence from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Having been born on September 20, 1957, Plaintiff was 49 years old on the date of the hearing before the Deputy Commissioner. Plaintiff is five (5) feet two (2) inches tall, and weighs approximately 250 pounds.
2. Since 1992, Plaintiff worked as a teacher's assistant at several public school systems in North Carolina. Plaintiff has a high school diploma, but she does not have a college degree.
3. Employer-Defendant is a publicly funded, Title I Charter School in Rocky Mount, North Carolina. *Page 6 
4. Employer-Defendant employed Plaintiff as a teacher's assistant/substitute teacher from 2000 through 2005. The 2004-2005 school year was the only year that Plaintiff worked for Employer-Defendant in a full-time capacity.
5. Although conflicting evidence has been offered, the Full Commission finds that in early May 2005, about three (3) weeks before the end of school, Employer-Defendant informed Plaintiff that her employment contract would not be renewed for the following school year, since she did not have either an Associate's Degree or a Bachelor's Degree. Plaintiff expected that when the new school year started, she would return to work as an on-call substitute teacher in the same part-time capacity that she previously worked up until the 2004-2005 school year, when she worked as a permanent substitute teacher.
6. Plaintiff presented to Dr. John Ashley Parker on May 25, 2005 complaining of chest pain and back pain. Dr. Parker advised Plaintiff that this chest pain was due to stress. Prior to that time, Plaintiff had not seen a doctor in three (3) years. The Full Commission finds, by the greater weight of the evidence, that the ultimate purpose of Plaintiff's May 25, 2005 visit with Dr. Parker was to evaluate her chest pain, and that Dr. Parker neither diagnosed nor ordered treatment for any condition related to a back or spinal condition during this visit. The Full Commission further finds that the pain of which Plaintiff complained on May 25, 2005 originated in her chest.
7. When Plaintiff arrived at work on the morning of May 26, 2005, she had no problems or complaints related to her back. May 26, 2005 was the last day of school for the students of Employer-Defendant. It was a half-day for the students, but a full day for staff members and teachers. *Page 7 
8. At the end of the half-day of school for the students, Ms. Meadow Davis, the teacher with whom Plaintiff worked from January 2005 to May 2005, instructed Plaintiff to stack approximately 20 to 23 children's desks and chairs away from the carpet in the classroom, in order to allow for carpet cleaning. Plaintiff had picked up about one-third (1/3) of the desks, stacking them with the chairs, when she felt what she described as a "twinge" in her back a little lower than her waist line. As she was stacking the desks and chairs, a chair slipped off of a desk and hit her back. When Plaintiff turned around to catch the falling chair, she felt significant back pain.
9. Ms. Davis testified that she did not witness Plaintiff injure her low back while moving the desks and chairs. However, Ms. Davis did testify that Plaintiff informed her of this incident either the day that it happened or the following day. Further, Ms. Davis testified that she got to know Plaintiff "fairly well" during the year that she worked with her, that she regarded her as a "very honest" person, and that she "wouldn't question anything that she [Plaintiff] would say."
10. Plaintiff completed her tasks and left school somewhere between 1:30 p.m. and 1:45 p.m. When she arrived at home, Plaintiff testified that she felt stiff, and that her back hurt worse. She took Tylenol, got a heating pad, and took a nap. When she awoke from her nap, school was closed, and so Plaintiff decided that she would call the next morning to report her work injury. The next morning, May 27, 2005, Plaintiff testified that she "couldn't hardly [sic] move," and that she had to get her husband to help her get out of bed. Once Plaintiff's husband assisted her out of bed, she called Employer-Defendant and left several voice mail messages with Ms. Dorothy Leonard, the school business manager.
11. Ms. Leonard testified, consistently with Plaintiff, that Plaintiff left her several voice mail messages, and that she had a telephone conversation with Plaintiff on May 27, 2005 *Page 8 
regarding Plaintiff's work injury that occurred on May 26, 2005. Further, Ms. Leonard testified that she has "very high regards for Ms. Tompkins," and that "[s]he has a very good character."
12. The Full Commission finds that in Ms. Leonard's official capacity as business manager for Defendant-Employer, she became aware of Plaintiff's May 26, 2005 work injury on May 27, 2005, by means of both multiple voice mail messages left by Plaintiff on that day, as well as by direct conversation with Plaintiff on the telephone on that day. Defendants had timely, actual notice of Plaintiff's injury, and Defendants were not prejudiced by the late filing of Plaintiff's Form 18. Further, Defendants did not raise this issue in their brief to the Full Commission.
13. On May 27, 2005, Plaintiff presented to Rocky Mount Family Medical Center for treatment of her low back injury. Mr. John Michael Lucas, a physician's assistant at Rocky Mount Family Medical Center, saw Plaintiff on May 27, 2005. At that time, Plaintiff reported "lower pain [going] down [the] right leg," with the onset of the pain being on the right side of her lower back with "pulling sharp pain, rad[iating] to hip," and the sensation of "needles." Mr. Lucas noted that Plaintiff's symptoms began "yest[erday] after moving furniture." His examination, which included actual pushing upon the areas of Plaintiff's back which she described as being painful, revealed moderate to severe tenderness in the thoracic, lumbar, and sacral areas, to the right of the spinal column muscles, with range of motion and flexion of Plaintiff's spine being limited, secondary to pain and spasm. Based upon his examination of Plaintiff, Mr. Lucas diagnosed her with a lumbar strain and referred her for physical therapy. 14. Mr. Lucas testified that his findings, described above, noting moderate to severe tenderness in the thoracic, lumbar, and sacral areas, to the right of the spinal column muscles, with limited range of motion and limited flexion, secondary to pain and spasm, were all objective *Page 9 
findings supporting Plaintiff's claim that she injured her back while at work on May 26, 2005. Further, Mr. Lucas testified that although it is somewhat difficult to ascertain whether a patient is malingering or exaggerating symptoms or complaints, he would typically note in the medical record whether he thought a patient was guilty of such conduct. Because Mr. Lucas did not make any such notation in his May 27, 2005 progress note, the Full Commission finds that Plaintiff's subjective complaints to Mr. Lucas were legitimate, unexaggerated, and consistent with the objective findings of Mr. Lucas. Finally, Mr. Lucas did not note an association between his findings on May 27, 2005 and those of Dr. Parker regarding Plaintiff's complaints of chest pain and back pain on May 25, 2005, even though he testified that he was aware of this visit with Dr. Parker, by virtue of the fact that he reviewed Plaintiff's past medical records with Rocky Mount Family Medical Center.
15. Dr. Mark Steven Abel, another physician with Rocky Mount Family Medical Center, testified at his deposition that he personally reviewed the progress note documenting Plaintiff's visit with Mr. Lucas on May 27, 2005, as well as all of the other visits Plaintiff had with any physician's assistant at Rocky Mount Family Medical Center. Further, the May 27, 2005 progress note has a notation at the bottom of the first page which states, "MD Review Note reviewed and agreed. msa." Similar notations are found at the end of subsequent progress notes documenting Plaintiff's visits at Rocky Mount Family Medical Center between June 2005 and August 2005 in which Plaintiff saw Mr. Lucas or any other physician's assistant. Based upon the greater weight of the evidence, the Full Commission finds that Dr. Abel, though not physically present, was aware of Plaintiff's initial visit with Mr. Lucas on May 27, 2005, that he agreed with Mr. Lucas's findings and treatment plan, that Dr. Abel was aware of Plaintiff's subsequent clinical course with Rocky Mount Family Medical Center, that he agreed with these findings and *Page 10 
treatment plans, and that Dr. Abel ultimately adopted these findings and treatment plans as his own, since a physician's assistant cannot treat patients in North Carolina without direct physician review and involvement, as occurred, here.
16. Plaintiff's next appointment with Rocky Mount Family Medical Center was on June 3, 2005, at which time her symptoms and complaints were essentially unchanged. Following this appointment, Plaintiff went on vacation for three (3) weeks. When Plaintiff returned from her vacation, her medical records indicate that her low back pain was stable. From June 29, 2005 through August 3, 2005, Plaintiff attended physical therapy treatment for her low back. Throughout this same time period, Mr. Lucas prescribed Plaintiff pain medication and muscle relaxants, and ordered a computed tomography (C.T.) scan of Plaintiff's lumbar spine. Mr. Lucas noted that this C.T. scan revealed "mild vertebral disk abnormalities," with minimal central canal stenosis at L4-L5, recommended that Plaintiff continue physical therapy, and that Plaintiff obtain a neurosurgery consultation if she desired.
17. On or about August 13, 2005, Plaintiff's right leg gave way when she was at a car dealership and she fell. On August 16, 2005, Plaintiff saw Mr. Lucas, at which time she reported the fall three (3) days earlier at a local business, and that her back pain had increased since the fall. Plaintiff testified that she estimated that she had had between 10 and 15 similar incidents since May 26, 2005 in which her right leg gave way and she fell. Plaintiff further testified that prior to May 26, 2005, she never had an incident in which her right leg gave way and she fell. Based upon the greater weight of the evidence, the Full Commission finds that Plaintiff's May 26, 2005 injury at work, which resulted in low back pain, especially on her right side, either caused or contributed to the multiple incidents in which Plaintiff's right leg gave way and she fell after May 26, 2005, including the August 13, 2005 fall at a car dealership. *Page 11 
18. On August 17, 2005, Plaintiff called Rocky Mount Family Medical Center and requested that Mr. Lucas fill out a disability form. Mr. Lucas testified that he had not written Plaintiff out of work prior to this date, and would not have given her a work note if she had not asked for one.
19. On August 29, 2005, Plaintiff reported to Dr. Abel at her initial appointment with him that her back pain rendered her unable to work. Dr. Abel diagnosed Plaintiff with degenerative joint disease, and referred her for physical therapy and a neuro-surgical consultation. Dr. Abel also took Plaintiff out of work, writing a note at this visit stating that Plaintiff was "not able to work due to severe back pain."
20. On March 15, 2006, Dr. Abel stated in a note, "I believe that Shirley Tompkins has been disabled since May 26, 2005 due to the injury she sustained while working at Rocky Mount Preparatory School — she continues to be disabled for the foreseeable future." Further, Dr. Abel testified in his deposition that it was his opinion, to a reasonable degree of medical certainty, that Plaintiff sustained an injury to her low back on May 26, 2005. Dr. Abel testified that he based this opinion upon Plaintiff's subjective history that she reported of feeling back pain subsequent to moving children's desks and chairs and then turning around to catch a falling chair on May 26, 2005, and upon his objective findings on examination, including "tenderness in the low back area with palpation . . . limited range of motion . . . straight leg raise, which is . . . minorly [sic] positive on the right side . . . and . . . observation of her." Dr. Abel went on to provide additional detail regarding his objective findings supporting his opinion, including his observation of Plaintiff's difficulty walking, changing positions, getting out of a chair, and getting onto an examining table, as well as specific tenderness to palpation over the right sacral and gluteal muscles and increased pain upon straightening of her right leg. Dr. Abel testified that all of these objective *Page 12 
findings of musculoskeletal pain and back strain are consistent with the May 26, 2005 injury that Plaintiff reported.
21. After May 26, 2005, Plaintiff underwent several radiological/diagnostic studies which indicate that she has degenerative joint disease and arthritis in her back, as well as spinal stenosis. However, Dr. Abel testified that there is no diagnostic study that can objectify musculoskeletal pain and back strain. Based upon the testimony of record, the Full Commission finds that the injury Plaintiff sustained to her back on May 26, 2005 is musculoskeletal in nature, and as such, is an essentially clinical diagnosis, which can be made through correlation of a patient's subjective complaints and history with the objective findings of physical examination.
22. Plaintiff reported to orthopaedic spinal surgeon Dr. William F. Lestini for an independent medical examination on April 18, 2006. Dr. Lestini diagnosed Plaintiff with long-standing degenerative changes in her lumbar spine, and referred her for a C.T. myelogram. On May 30, 2006, Plaintiff saw Dr. Lestini for a follow-up visit, and he interpreted the C.T. myelogram as revealing only mild instability in the lumbar spine, with very little stenosis. In addition, Dr. Lestini made the following recommendations during this visit:
 . . . I would recommend placing her in a physical therapy regimen for weight loss, conditioning and strengthening for six weeks with a home program thereafter. At the end of that period I would start her on a light duty work schedule, if possible, to see how she would tolerate this mildly progressive program. We will see her back in eight weeks. If she is not doing well at this [time], then she may need to consider either injectional therapy and/or decompression and stabilization as a last resort.
23. When asked whether he thought that Plaintiff sustained a low back injury on May 26, 2005, Dr. Lestini testified that "the best I can say is that she may have aggravated what may have already been existing, but it sounds like she had existing pain prior to this event." *Page 13 
24. Dr. Abel testified that he continues to treat Plaintiff, and at no time has he thought that she was guilty of either symptom embellishment or symptom magnification.
25. Dr. Abel does not believe Plaintiff has been able to perform any level of work since May 26, 2005, due to the back injury she sustained on that date. Further, Dr. Abel is of the opinion that Plaintiff will not ever be able to return to work in any capacity.
26. The Full Commission finds, by the greater weight of the evidence, that Plaintiff's hearing testimony is credible. Plaintiff's co-workers, Ms. Meadow Davis and Ms. Dorothy Leonard, both testified positively as to the veracity of Plaintiff's credibility and truthfulness. Dr. Abel and physician's assistant Lucas testified that they did not think Plaintiff was malingering or exaggerating her symptoms. Despite the speculation and innuendo on the part of Defendants, the Full Commission finds, based on the greater weight of the evidence, that Plaintiff's testimony regarding her medical history, the circumstances surrounding the non-renewal of her employment contract with Defendant-Employer in May 2005, and, in particular, the circumstances giving rise to her May 26, 2005 injury at work, as well as the resulting pain and other symptoms arising therefrom, is credible.
27. The Full Commission further finds, based upon the credible testimony of Plaintiff, physician's assistant John Michael Lucas, as well as the credible testimony of Mark Steven Abel, M.D., that Plaintiff sustained a compensable, work-related injury arising out of and in the course of her employment on May 26, 2005, while moving children's desks and chairs, and when she turned to catch a falling chair, and that such injury either caused or contributed to the subjective complaints and the objective findings initially noted by Mr. Lucas in his May 27, 2005 progress note documenting his examination of Plaintiff's back on that day, and either caused or contributed to the subsequent lower back pain Plaintiff continues to experience. The Full *Page 14 
Commission further finds that the lower back pain Plaintiff described as commencing on May 26, 2005 occurred as a direct and proximate result of Plaintiff stacking children's desks and chairs, and twisting and/or turning around to catch a chair that fell while she was moving children's desks and chairs.
28. The Full Commission also finds, based upon the greater weight of the evidence, that Plaintiff has been unable to work in any capacity from May 26, 2005 through the present. However, the Full Commission does not find that Plaintiff is permanently and totally disabled from employment, but rather, finds that Plaintiff would benefit from the recommendations set forth by Dr. William F. Lestini in his progress note of May 30, 2006, including, a physical therapy regimen for weight loss, conditioning, and strengthening for six (6) weeks with a home program thereafter, and at the conclusion of such physical therapy, the commencement of a light duty work schedule, if possible.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendants had timely, actual notice of Plaintiff's injury, and Defendants were not prejudiced by the late filing of Plaintiff's Form 18. N.C. Gen. Stat. § 97-22 (2007).
2. The Full Commission concludes that Plaintiff has met her burden to prove that she suffered a compensable injury arising out of and in the course of her employment, as a direct result of a specific traumatic incident, on May 26, 2005 while moving children's desks and chairs, and while twisting and/or turning to catch a falling chair. N.C. Gen. Stat. § 97-2(6) (2007); Chambers v. Transit Management, 360 N.C. 609,636 S.E.2d 553 (2006); Goforth v. K-Mart Corp., 167 N.C. App. 618,605 S.E.2d 709 (2004). *Page 15 
3. The Full Commission concludes that Plaintiff has met her burden of establishing disability as a result of her compensable injury of May 26, 2005 through the medical testimony of physician's assistant John Michael Lucas and Mark Steven Abel, M.D. that she is physically incapable, as a consequence of her work-related injury, of work in any employment.Russell v. Lowe's Products Distributing, 108 N.C. App. 762 (1993). Specifically, the Full Commission concludes that Plaintiff was and continues to be temporarily and totally disabled from the date of her injury on May 26, 2005 until the present. Britt v. Gator Wood,Inc., ___ N.C. App. ___, 648 S.E.2d 917 (2007).
4. Employers are required to provide medical compensation related to a compensable injury when the treatment in question is reasonably required to lessen the period of disability, effect a cure, or give relief. N.C. Gen. Stat. §§ 97-2(19) and 97-25 (2007); Little v. Penn VentilatorCo., 317 N.C. 206, 210, 345 S.E.2d 204, 207 (1986).
5. The Full Commission concludes that Plaintiff is entitled to temporary total disability benefits beginning May 26, 2005, and continuing until further order of the Industrial Commission, and is further entitled to medical compensation for treatment of Plaintiff's compensable injury that is reasonably required to lessen the period of disability, effect a cure, or give relief. N.C. Gen. Stat. §§ 97-25 and97-29 (2007).
6. The Full Commission concludes that Plaintiff would benefit, and, therefore, Defendants shall provide and Plaintiff shall comply with the recommendations set forth by Dr. William F. Lestini in his progress note of May 30, 2006, including, a physical therapy regimen for weight loss, conditioning, and strengthening for six (6) weeks with a home program thereafter, and at the conclusion of such physical therapy, the commencement of a light duty work schedule thereafter, if possible. *Page 16 
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to Plaintiff at a stipulated compensation rate of $230.78 from May 26, 2005 through the date of this Opinion and Award, and continuing each week hereafter until further order of the North Carolina Industrial Commission.
2. Defendants shall pay for Plaintiff's medical expenses for past and future medical care reasonably related to her May 26, 2005 compensable injury according to procedures adopted by the North Carolina Industrial Commission.
3. A reasonable attorneys' fee in the amount of 25 percent of the compensation benefits payable herein is hereby approved for Plaintiff's attorneys. Plaintiff's attorneys shall be paid 25 percent of all accrued compensation, and thereafter, every fourth (4th) compensation payment due Plaintiff shall be paid directly to Plaintiff's attorneys.
4. Defendants shall pay the costs of this action, including expert witness fees in the amount of $350.00 to Dr. John Ashley Parker, $525.00 to Dr. Mark Steven Abel, and $225.00 to Mr. John Michael Lucas (if not already paid).
This the __ day of May 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 CONCURRING: *Page 17 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1